Scileppi, J.
Nathan Jackson was indicted, in 1960, for first degree murder for the killing of Patrolman William J. Ramos. At Jackson’s first trial, in the former Kings County Court, the prosecution presented evidence both as to premeditated and deliberate murder (Penal Law, § 1044, subd. 1) and felony murder (former Penal Law, § 1044, subd. 2). The jury was instructed as to defendant’s potential liability for each. The jury specifically found defendant guilty of common-law murder in the first degree but was silent as to felony murder. This court affirmed the conviction without opinion (10 N Y 2d 780 [1961]). The United States Supreme Court denied certiorari (368 U. S. 949 [1961]). Thereafter defendant initiated a Federal habeas corpus proceeding in which, ultimately, the United States Supreme Court found that the procedure used by the New York trial court for determining the voluntariness of a confession introduced into evidence against appellant was defective under the Fourteenth Amendment of the United States Constitution. The United States Supreme Court ordered that the State accord Jackson a hearing by a Judge without jury as to the voluntariness of his confession ; or accord him a new trial; or release him (Jackson v. Denno, 378 U. S. 368 [1964]). The District Attorney chose to retry defendant, and thereupon this court, with consent of counsel, granted defendant’s motion to amend the remittitur so as to vacate the judgment of this court and remand the matter for a new trial (15 NY 2d 851 [1965]).
Jackson was retried on the original indictment in the Supreme Court, Kings County, before a Judge and a jury. It is from the judgment of guilty in that trial that the present appeal is taken.
Prior to the second trial, the prosecutor moved to impanel a *444 special jury (Judiciary Law, § 749-aa, repealed by L. 1965, ch. 778, § 3, eft. Sept. 1, 1965), to which defendant objected on the ground that his trial before such a jury would violate his lights under the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution. Such a special jury was impaneled over defendant’s objection, and a later motion to set aside the verdict on that basis was denied.
At the beginning of the second trial, and again as soon as it became apparent that the prosecution intended to introduce evidence pertaining to felony murder as well as premeditated and deliberate murder, defendant objected on the ground that he would be denied his protection against double jeopardy if he were retried for felony murder. Defendant renewed that objection before the case went to the jury. All objections were overruled and exceptions were taken. Defendant also took exception to all portions of the Trial Judge’s charge relating to the question of felony murder on the ground that defendant was thereby deprived of his protection against double jeopardy.
The underlying felony as to which evidence was introduced was the robbery committed by Jackson on one Maisy McGibbons, the room clerk of the I. C. U. Hotel, on June 14, 1960. Jackson entered the hotel sometime between 1:00 and 1:30 a.m. Shortly thereafter he took $56.50 at gunpoint from Maisy McGibbons in an office located on the second floor. Jackson escorted the room clerk, a porter and several guests, who in the meantime had entered the office to check in or out of the hotel, to a third-floor room. Jackson warned all those whom he had put into the third-floor room not to follow him or make a commotion, closed the door of the room, which did not lock, and proceeded out of the hotel. Within a very short time, the hotel clerk and porter broke open a window overlooking the street and shouted for assistance. Patrolman William J. Ramos appeared on the scene and met Jackson as the latter was emerging from the hotel doorway. A scuffle ensued. Patrolman Ramos was knocked to the ground and then drew his gun and shot and wounded Jackson, and the latter, who had drawn a gun earlier, then shot and killed Patrolman Ramos in an exchange of fire.
The Trial Judge charged the jury on the question of Jackson’s guilt with respect to felony murder and the various degrees of *445 common-law murder. As to felony murder, the Judge charged that a verdict of guilty could be returned only if it was found that the underlying felony had not terminated at the time Ramos was shot.
The jury found the defendant guilty of felony murder. Defendant moved to set aside the verdict on the ground that it violated the double jeopardy provisions of the State and Federal Constitutions. The Trial Judge denied that motion.
After being convicted, defendant was accorded a hearing before the trial jury, pursuant to section 1045-a of the Penal Law, to determine whether he would suffer the penalty of life imprisonment or death. In that “ second stage ” proceeding the prosecutor, without notice to defendant, elicited testimony from a police officer that 11 years earlier he had overheard Jackson confess in a police station to a series of robberies and burglaries in the Borough of Brooklyn. In fact, the witness testified, a four-foot by three-foot chart of a Brooklyn business area had been found in Jackson’s lodging, and he had confessed that it recorded locations that he had burglarized as well as the proceeds of those burglaries and the locations of other establishments he intended to burglarize. The prosecution, however, did not produce the chart. Defendant apparently was never indicted or tried for any of the burglaries to which the chart allegedly pertained.
Defendant objected to the foregoing testimony on the ground that it denied him due process of law, and he demanded a hearing as to the issue of voluntariness. The Trial Judge rejected defendant’s objection and refused to accord him a hearing on that question. At no time did the Trial Judge himself make any finding as to the voluntariness of the alleged confession, nor did he submit that question to the jury. After hearing additional evidence on the question of penalty, the jury decreed the death penalty. The Trial Judge denied defendant’s motion to 'set aside the determination on the ground that the use of the aforesaid confession violated defendant’s rights to due process under the Fourteenth Amendment of the United States Constitution.
On this appeal, Jackson raises the following arguments:
(1) Defendant’s constitutional protection against double jeopardy was violated by his retrial and conviction for felony murder;
*446 (2) The Trial Judge committed reversible error in his rulings and instructions to the jury concerning the question of when the underlying felony had terminated;
(3) The Trial Judge committed substantial error in the “ second stage ” penalty hearing by denying defendant the protection against involuntary confessions guaranteed by the Fourteenth Amendment of the Constitution of the United States; and
(4) Defendant’s trial before a special jury violated his rights under the equal protection and due process clauses of the Fourteenth Amendment of the Constitution of the United States.
We shall consider each of these arguments in the order in which they were raised.
Double Jeopardy
Section 6 of article I of the Constitution of the State of New York provides: “ No person shall be subject to be twice put in jeopardy for the same offense ” (emphasis added). The Fifth Amendment to the Constitution of the United States contains essentially the same provision.
It is the law of this State that a person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction, upon an indictment or information which is sufficient in form and substance to sustain a conviction, when a jury has been impaneled and when some evidence is taken (People ex rel. Stabile v. Warden, 202 N. Y. 138; People v. Cignarale, 110 N. Y. 23; People v. M’Gowan, 17 Wend. 386 [N. Y., 1837]).
When a defendant is put in jeopardy for a number of offenses, there are three possible results which are pertinent to our present discussion: the jury may (1) convict the defendant of all of the offenses; (2) acquit him of all of them; or (3) convict him of some and fail to render a verdict as to the others. If the jury acquits the defendant of all the offenses, it is too well settled to require citation that the defendant cannot be tried again for those offenses. Similarly, if a defendant stands convicted of all of the offenses, he cannot be tried again for those offenses unless he successfully appeals from the judgment of conviction and obtains a new trial (People v. Cignarale, supra). Where there are several offenses charged in a single indictment and the jury convicts as to some, but it is silent as to others, the jury’s silence is equivalent to a verdict of acquittal as to those offenses for *447 which it failed to return a verdict (People v. Dowling, 84 N. Y. 478; Guenther v. People, 24 N. Y. 100).
Prior to 1881, if a defendant was tried for a number of offenses and the jury found him guilty of some and was silent as to the others, he could not be retried for any of the offenses if he did not take an appeal (People v. Cignarale, supra). However, if the defendant took an appeal and obtained a new trial, he could be retried only for those offenses of which he was convicted (People v. Dowling, supra; People v. Palmer, 109 N. Y. 413, 420). If a defendant was tried for a crime which was divided into degrees and the jury convicted him of a lesser degree of the crime and was silent as to the higher degree, the defendant could not be retried for any degree of the same crime if he did not take an appeal or if his appeal was unsuccessful (People v. Dowling, supro; People v. Palmer, supra). If the defendant successfully appealed from his judgment of conviction, he could only be retried for the degree of the crime of which he was convicted (Guenther v. People, supra; People v. Dowling, supra). This was known as the rule of limited waiver.
In 1881, the Legislature enacted sections 464 and 544 of the Code of Criminal Procedure which provide that granting a “ new trial places the parties in the same position as if no trial had been had ” and a new trial “ shall proceed in all respects as if no trial had been had”. These sections were interpreted so as to allow reprosecution for the higher degree of an offense if the conviction for the lesser degree was reversed even though the jury had been silent as to the higher degree (Matter of Fiorillo v. Farrell, 16 N Y 2d 678; People v. Ercole, 4 N Y 2d 617; People v. McGrath, 202 N. Y. 445; People v. Palmer, supra). This was known as the rule of absolute waiver. The rationale of these decisions was that “ The effect of the defendant’s appeal is merely to continue the trial under the indictment in the appellate court; and if reversal of the judgment of conviction follows, that judgment, as well as the record of the former trial, have been annulled and expunged by the judgment of the appellate court, and they are as though they never had been; while the indictment is left to stand as to the crime, of which the prisoner had been charged and convicted, as though there had been no trial” (People v. Palmer, supra, pp. 419-420). Despite this sweeping language that a judgment of reversal completely *448 expunges the former trial, the rule in New York apparently remained as it was prior to 1881 that if a defendant was tried for more than one offense and the offenses were of a different nature (not just degrees of the same crime) and he was convicted of some and acquitted of the others or the jury was silent as to some, he could only be retried for those offenses of which he Avas convicted if he obtained a new trial (People v. Bloeth, 16 N Y 2d 505; People v. Palmer, supra, p. 420). Furthermore, the passage of sections 464 and 544 of the Code of Criminal Procedure did not abrogate the rule that if a conviction for a lesser degree of a crime was left standing, either because no appeal was taken or the appeal was unsuccessful, a reprosecution for the greater charge, upon which the jury was silent, would not be permitted (People v. McCarthy, 110 N. Y. 309; Penal Law, § 32).
Recently, this court held that if a defendant was convicted of a lesser degree of a crime and the jury was silent as to a hig’her degree of the same crime, he could not be retried for the higher degree if he successfully appealed from his conviction of the lesser degree (People v. Ressler, 17 N Y 2d 174; accord Green v. United States, 355 U. S. 184; Umted States ex rel. Hetenyi v. Wilkins, 348 F. 2d 844, cert. den. sub nom. Mancusi v. Hetenyi, 383 U. S. 913).
It is often said that a defendant cannot be retried for those offenses on which the jury was silent because the jury’s silence implies an acquittal of those offenses. This reasoning, however, is somewhat misleading. The jury might very well have been silent because it believed that the defendant was not guilty, but that is not the only explanation for the jury’s silence. For instance, the jury may have misunderstood the Judge’s instructions and may have been under the impression that they could convict on only one offense, but not on the others. The jury’s silence as to some offenses charged in the indictment might also be only an expression of its desire to be lenient. Thus, there are many plausible explanations for the jury’s silence. The point to be understood, however, is that if a jury is given an opportunity to return a verdict and it fails to do so, a defendant cannot be retried for those offenses on which it was silent because he has been once placed in jeopardy (People v. Ressler, supra; People v. Dowling, supra; United States ex rel. Hetenyi v. *449 Wilkins, supra; Green v. United States, supra). This proposition was more aptly put by Mr. Justice Black when he stated in Green: “ [T]he result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first ■ degree.[*] For here, the jury was dismissed without returning any express verdict on that charge and without Green’s consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green’s jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense ” (Green v. United States, supra, pp. 190-191).
The defendant contends that for the purposes of double jeopardy premeditated and deliberate murder and felony murder are separate offenses. He argues that since the jury at his first trial was silent on the theory of felony murder and since he had been placed in jeopardy on that theory, he could not under the Bessler, Green and Hetenyi decisions be tried again for felony murder.
The defendant’s argument stands or falls on his contention that felony murder and premeditated murder are separate offenses and that the jury was given the opportunity to return a verdict on the felony murder offense but failed to do so. If felony murder and premeditated murder constitute one and the same offense — viz., murder in the first degree ■ — Jackson was not put in double jeopardy at his second trial when he was tried for felony murder as well as premeditated murder; for if a defendant is convicted of a single offense and takes a successful appeal from his judgment of conviction, he waives his constitutional protection against double jeopardy for that offense (People v. Cignarale, supra). Similarly, if the jury was not given an opportunity to return a verdict on the felony murder theory and *450 the jury was discharged without doing so, the defendant would not be twice put in jeopardy if he was retried for felony murder after he successfully appealed from his first judgment of conviction (see Green v. United States, supra, pp. 190-191). •
This court has held that for certain purposes premeditated and deliberate murder and felony murder constitute one offense: viz., murder in the first degree (People v. Levan, 295 N. Y. 26; People v. Roper, 259 N. Y. 170; People v. Lytton, 257 N. Y. 310; People v. Sullivan, 173 N. Y. 122). Murder at common law was homicide committed willfully, feloniously and with malice aforethought (People v. Nichols, 230 N. Y. 221). The malice aforethought could be shown either by proving premeditation and deliberation or by proving that the homicide was perpetrated during the commission of a felony. No matter what theory was proven, the end result was that the defendant was convicted of murder in the first degree. As Chief Judge Cardozo stated in People v. Lytton (supra, pp. 314A315): “ Homicide, we said, is not murder ‘ without evidence of malice and of a felonious intent and a depraved mind ’ * * *. The malice or the state of mind may be proved by showing that the act was done with a deliberate and premeditated design to kill. The case will then fall under subdivision 1 (§ 1044). It may [also] be proved by showing that the act was done by one then and there engaged in the commission of another felony ® * *. The case will then fall under ■ subdivision 2. In the one case as in the other a single crime is charged, the independent felony like the deliberate and premeditated intent being established solely for the purpose of characterizing the degree of the crime so charged, the evil mind or purpose inherent in the killing * * *. If there could be any doubt about this, the form of the indictment would be sufficient to dispel it. The rule is settled that there is no need to charge in an indictment that the homicide was wrought in the commission of another felony. It suffices to state in the common-law form that the defendant acted ‘ willfully, feloniously and with malice aforethought ’ * * *. This would never do if the independent felony were conceived of as changing the identity of the crime instead of merely characterizing the degree of culpability to be imputed to the killer.”
This court has also recognized that in certain cases it is possible for a defendant to be convicted of both felony murder' and *451 premeditated and deliberate murder for killing a single person (People v. Leonti, 18 N Y 2d 384; People v. Sullivan, supra). In Leonti, the defendant was convicted of felony murder under a felony murder count, and second degree murder under a premeditated murder count. Both counts arose out of the death of the same person. It was argued that Leonti could not be convicted of second degree murder and felony murder because the former requires intent while the latter does not. Both convictions were sustained, and properly so, because the ‘ ‘ without a design to effect death” language of subdivision 2 of section 1044 of the Penal Law does not mean that one cannot be convicted of felony murder if he intended to kill; but rather one is guilty of felony murder if he kills another while committing a felony regardless of a design to effect death (People v, Sullivan, supra, pp. 129-130). We also held that it was proper to sentence Leonti to 40 years in prison under the second degree murder conviction to run concurrently with the life sentence imposed for the felony murder conviction because concurrent sentences do not constitute multiple punishments prohibited under section 1938 of the Penal Law (People ex rel. Maurer v. Jackson, 2 N Y 2d 259).
Leonti lends support to the theory that felony murder and premeditated murder are two offenses inasmuch as it holds that a defendant could be convicted of both or presumably acquitted of one and convicted of the other. This court, however, has never directly decided whether felony murder and premeditated murder constitute a single offense or multiple offenses for the jmrposes of double jeopardy.
We need not decide this question now, for in the case at bar the jury was charged and directed to bring in a verdict as if felony murder and premeditated murder constituted a single offense. A two offense theory of murder presupposes that the jury was given a full opportunity to bring in a verdict on each theory (see Green v. United States, supra, pp, 190-191), or at the very least that the jury was directed to bring in a verdict of acquittal on one of the theories after it has found the defendant guilty on the other (People v. Bloeth, 16 N Y 2d 505, supra). In the case at bar, the jury at Jackson’s first trial was charged on the law of felony murder and on the law of premeditated murder. The court told the jury that it could convict Jackson *452 of either felony murder or premeditated murder, but the court said that the jury could ‘1 render only one of the aforesaid verdicts ” and, at another place, “ You will render one verdict; one or the other, not both ” (emphasis added). No exception was taken to this charge.
We cannot say that the jury’s silence on the felony murder theory had the effect of acquitting Jackson of that theory. The jury’s silence could only have that effect if it were given a full opportunity to consider the felony murder theory (see Green v. United States, supra, pp. 190-191; cf. Cichos v. Indiana, 385 U. S. 76). Since the jury was instructed to render only one verdict, it had no reason to consider the felony murder charge once it found the defendant guilty of premeditated murder. We are, of course, aware of the fact that the Judge instructed the ' jury that the order of consideration of the respective theories was entirely up to them. Thus, it is possible that the jury considered felony murder first and acquitted him of that theory but under the single verdict charge the jury was not able to express an acquittal, and to say that the defendant was so acquitted would be to engage in mere speculation.
Neither Green v. United States (supra), United States ex rel. Hetenyi v. Warden (supra) nor People v. Ressler (supra) dictates that the State be barred from retrying Jackson for felony murder. All of those decisions involved a retrial on a higher degree of a crime after a defendant had successfully appealed from a judgment of conviction of a lesser degree of a crime. The courts in those three cases held that retrial on the higher degree of a crime placed a hardship on a defendant’s right to appeal from a conviction of the lesser degree. The hardship was, of course, that the defendant incurred the risk of being retried for the higher degree of the crime and of receiving a harsher penalty if he was found guilty of the greater degree. This 1 ‘ grisly choice ” was deemed to be an unconscionable burden on the defendant’s right to appeal.
In the case at bar, the defendant faced no “ grisly choice ” when he appealed from his first judgment of conviction. The jury had found the defendant guilty of murder in the first degree and had sentenced him to pay the “ supreme penalty ”. When Jackson was retried, he was facing the same1 ‘ supreme penalty ’ ’.
Thus, we hold that in the circumstances of this case the *453 defendant was not twice put in jeopardy when he was retried on the theory of felony murder.
The “ Termination ” Instructions
After retiring, the jury returned and submitted to the court the following question: “ Your Honor: What constitutes the termination of a felony? ”
The foreman repeated the question in these words: “If we could find out, Your Honor, when the felony begins and when it is completed.”
In response, the court said:
“ Now I shall answer your question as to what constitutes the termination of a felony, by saying to you gentlemen, that is the precise problem for you to determine. The felony involved here, which is your obligation to determine, is the crime of robbery and larceny, because I indicated to you that the crime of robbery also has within its purpose the crime of larceny. Do you understand? Do you understand that? If you don’t, I wish somebody would indicate by raising his hand. In order to complete a crime of robbery, one also steals from the victim that is to be robbed. Is that clear?
“As to the crime of robbery, which is the underlying crime here which is involved in the determination by you of the murder charge on a felony theory, it must be determined by you as to when it terminated. That is your problem, because that becomes a question of fact. You understand that. You have the evidence from the testimony. And, gentlemen, it is for you to determine the facts in the case, as I indicated before, and from what the evidence is in this case. If there was a robbery and a larceny— when I say ‘ if ’, it is because you are the ones to determine whether there was — if you find there wasn’t any robbery and any larceny in this case, then forget anything about the subsequent murder insofar as it is predicated on the crime of robbery, because if you find there was no robbery, there cannot be a felony murder. Did the robbery take place? It is your problem to determine. Did it take place? If so, when did it start? And the question- — -without my begging the question — when was it concluded? When was it finished? When was it consummated? That is for you to determine.”
*454 This “ charge ” is only partly correct. Under normal circumstances, the point at which the alleged underlying felony terminated is a fact question for the jury (People v. Lunse, 278 N. Y. 303, 312-314; People v. Ryan, 263 N. Y. 298, 304; People v. Walsh, 262 N. Y. 140, 148; People v. Marwig, 227 N. Y. 382). But the jury must be sufficiently informed as to what constitutes a termination of a felony in order to determine if the felony .has terminated. The most succinct statement of the law in this area is found in People v. Walsh (supra, p. 148): “ In short, even upon the testimony of the prosecution alone, the question of whether or not the homicide occurred during the commission of the felony was one of fact. It should have been left to the jury under instructions pointing out generally that the killing to be felony murder must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime (Dolan v. People, 64 N. Y. 485); that escape may, under certain unities of time, manner and place, be a matter so immediately connected with the crime as to be part of its commission (People v. Giro, 197 N. Y. 152); but that where there is no reasonable doubt of a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent. (People v. Marwig, 227 N. Y. 382.) ” (See, also, People v. Smith, 232 N. Y. 239, 242-243; People v. Nichols, 230 N. Y. 221, 228; People v. Michalow, 229 N. Y. 325, 331.)
Compared to the language of Walsh (supra), the court’s answer to the jury’s request for enlightenment was singularly uninformative.
The defendant contends that the Trial Judge committed reversible error in failing to properly answer the jury’s request for additional information on the termination of the underlying felony.
We disagree.
There is no doubt that if a jury requests additional information, the information required must be given (Code Crim. Pro., § 427; People v. Miller, 6 N Y 2d 152; People v. Gonzalez, 293 N. Y. 259). It is not the law, however, that every failure to answer a question propounded by a jury gives rise to reversible error (People v. Miller, supra, p. 156). In each ease, we must *455 examine if the failure to answer the jury’s question gives rise to a serious prejudice to the defendant’s rights (People v. Miller, supra, p. 156; People v. La Marca, 3 N Y 2d 452, 461; People v. Cooke, 292 N. Y. 185, 188).
In the case at bar, we find no serious prejudice to the defendant’s rights. The Judge could have instructed the jury, for example, “that escape may, under certain unities of time, manner and place, be a matter so immediately connected with the crime as to be part of its commission (People v. Giro, 197 N. Y. 152); but that where there is no reasonable doubt of a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent. (People v. Marwig, 227 N. Y. 382.) ” (People v. Walsh, supra, p. 148.)
The evidence of guilt was so convincing that we cannot conceive of a rational jury finding that the defendant had abandoned the robbery and that the felony had been terminated. The defendant was intercepted by Patrolman Ramos as he was emerging from the hotel where the robbery was committed. A scuffle ensued and the police officer was shot only a few short feet from the premises. Thus, unities of time and place between the robbery and the homicide were such that it is inconceivable that a sensible jury would have acquitted, had there been no error. This being so, it follows that the court’s asserted error in failing to expressly answer the jury’s question must be regarded as harmless (Code Crim. Pro., § 542; People v. La Marca, supra).
The Sehtehcihg Stage
The defendant’s argument that his rights were violated by the introduction, without a preliminary “ Huntley type ” hearing, of certain confessions to other crimes is without merit. Subdivision 3 of section 1045-a of the Penal Law says that in the second stage or sentencing trial “ evidence may be presented by either party on any matter relevant to sentence including, but not limited to, the nature and circumstances of the crime, defendant’s background and history, and any aggravating or mitigating circumstances. Any relevant evidence, not legally privileged, shall be received regardless of its admissibility under the exclusionary rules of evidence.”
*456 At the outset, let it be perfectly clear that we are not sanctioning the use of coerced confessions at the sentencing stage (cf. Gilbert v. California, 388 U. S. 263). We are simply holding that at the sentencing stage a defendant is not entitled to prior notice that the District Attorney is planning to introduce a confession and he is not automatically entitled to a “ Huntley hearing ” on its voluntariness prior to its introduction. There is nothing in section 1045-a of the Penal Law which, requires such a hearing.
If the defendant wishes to exclude a confession from the sentencing stage, it is incumbent upon him to object to its admission on the ground that it is involuntary, and to come forward with some evidence indicating that the confession was coerced. If the Judge feels that the defendant’s allegation.of coercion has some merit, a “ Huntley type ” hearing may then be held and, if the confession is found to be involuntary, it should be excluded.
In this case, the defendant simply objected to the introduction of the confessions on the ground that they were not found to be voluntary in a “ Huntley hearing ”. He never alleged that the confession was involuntary, and never came forward with any fact to indicate that the confessions were coerced.
The Special Juey
The argument that Jackson’s trial before a special, or “ blue ribbon ’ ’, jury violated the equal protection clause of the Fourteenth Amendment to the Federal Constitution is also without merit. The statute authorizing the impaneling of a blue ribbon jury (Judiciary Law, § 749-aa [repealed L. 1965, ch. 778, § 3]; but preserved in part by amendments of Judiciary Law, §§ 590, 597 [L. 1965, ch. 778, §§ 1, 2]) was specifically approved as constitutional in Fay v. New Yorh (332 U. S. 261), and we have consistently refused to find that this section was unconstitutional (see, e.g., People v. Torres, 17 N Y 2d 820, remittitur amd. 18 1ST Y 2d 749, to reflect the fact that the defendant argued and we did not find a violation of the 14th and 6th Amendment rights by trial before a blue ribbon jury; People v. Maggiore, 16 N Y 2d 1009; People v. Bloeth, 16 N Y 2d 505, supra). The defendant has not raised any new arguments or *457 cited any new relevant authority which would indicate to us that our prior decisions were in error.
In conclusion, under the circumstances of this case, the defendant was not twice put in jeopardy for felony murder; the Trial Judge’s failure to properly instruct the jury did not seriously prejudice the defendant’s rights; the defendant was not entitled to a “ Huntley hearing ” prior to the introduction of the confessions at the sentencing stage without first objecting to their admission on the ground that they were involuntary and without some showing on his part that the confessions were coerced; and the defendant’s trial before a “ blue ribbon ” jury did not violate the equal protection clause of the Fourteenth Amendment.
Accordingly, the judgment of conviction and the sentence thereon should be affirmed.
Chief Judge Fuld and Judges Van Vookhis, Burke, Bergan, Keating and Breitel concur.
Judgment of conviction affirmed.

 As Mr. Justice Frankfurter pointed out, the assumption that the jury had acquitted Green of first degree murder was not a legitimate one at all. Green was indicted for arson and for murder in the first degree. The jury convicted him of arson and murder in the second degree; Having found him guilty of arson and murder in the second degree, the jury found him guilty of all of the elements necessary to convict Green of first degree felony murder with which he was charged (Green v. United States, supra, p. 215 [Frankfurter, J., dissenting]). The jury’ verdict was obviously an expression of leniency.