THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE M. CARTER, Appellant.

Third Department, December 23, 1975

*Barry M. Lippman* for appellant.

*Francis J. Vogt, District Attorney,* for respondent.

KANE, J. Defendant raises no issue upon this appeal concerning the propriety of his conviction of first degree robbery; his attacks are directed instead at the court's charge and the sufficiency of the proof as it relates to his conviction of murder predicated on the theory of felony murder. When read as a whole, the court's charge fairly stated the applicable law and, even if the challenged statement could be considered confusing or erroneous, defendant took no exception thereto or requested any clarification. More substantial is defendant's claim that the proof was insufficient to establish that the charged homicide occurred in the course of and in furtherance of the crime of robbery or of immediate flight therefrom (Penal Law, § 125.25, subd 3). Its resolution necessitates a recitation of the salient facts.

Prosecution witnesses testified that defendant and one Blackmon, who are both black, entered a taxicab in the Orange County City of Newburgh at 12:26 P.M. on August 28, 1973; that the cab was seen empty and apparently abandoned at around 1:30 P.M. that afternoon in the outskirts of that city in Ulster County; that at about the same time two black men, one without a shirt, were seen walking in that vicinity; and that later that day the cab driver was found dead of severe neck wounds near a pump house in the same general area with his wallet near the body. Although he did not testify at trial, defendant surrendered himself to the police on September 1, 1973 and, after appropriate warnings, volunteered a statement of his activities concerning these events which admitted that he and Blackmon, armed with a knife purchased with funds supplied by defendant and a .22 caliber handgun, had entered the taxicab with intent to rob its driver. His confession proceeded to recount their journey with the victim which ended, so said the defendant, at a red shack.

There defendant tore up his and the driver's shirt and bound the victim to a tree while Blackmon took his watch and wallet. As they drove off they heard the cab being called on its radio and, fearing capture, returned and parked the vehicle some 25 feet from where the victim was still tied to the tree. Again they departed, this time on foot. When they were about a half-mile away, Blackmon assertedly told defendant that because the cab driver could identify him, since he had been in the vehicle's front seat, he was going back to kill him. Blackmon then left while defendant allegedly continued walking away from the scene. When he next encountered Blackmon, according to defendant some 30 to 40 minutes later jumping out of an apple grove along the road on which defendant was hitchhiking, they rejoined and obtained a ride into Newburgh where together they pawned the victim's watch. Later they walked to defendant's house where he asked whether Blackmon had shot the cab driver, to which Blackmon supposedly replied that he had cut him. Defendant further stated that they stole about $45 from the cab driver from which Blackmon gave him $21.

From the foregoing, it is contended that when Blackmon went back he took the victim from where he had been tied, drove to the pump house, and there killed him without defendant's knowledge. He therefore concludes that the homicide did not occur in the course and furtherance of the robbery or immediate flight therefrom; rather, it took place after the underlying robbery had already terminated.

From an examination of the direct and circumstantial evidence in this record, we are convinced that sufficient proof existed upon which the jury could properly have rendered its verdict and convicted defendant of felony murder. "It is possible to have a factual situation in a case of felonious homicide where only one conclusion can be drawn as to whether or not the homicide took place during the commission of the felony" *(People v Walsh,* 262 NY 140, 147). Generally, however, the matter is a fact question and only rarely may it be decided by the trial court as a matter of law *(People v Walsh, supra,* p 147; cf. *People v Jackson,* 20 NY2d 440, 454; *People v Sobieskoda,* 235 NY 411, 420; *People v Nichols,* 230 NY 221). Indeed, defendant does not contest the instant charge insofar as that issue was placed before the jury as one of fact; he maintains that the jury verdict thereon is not supported by the evidence as a matter of law. The cases upon which he principally relies,

*People v Moran* (246 NY 100) and *People v Marwig* (227 NY 382), are factually inapposite and, in each of them, reversal was mandated by reason of an erroneous charge. To the extent that they comment on circumstances in which escape or flight was involved as a desistance from the commission of the underlying felony, their force is even weaker since the language "of immediate flight therefrom" did not then exist by statute as a factor apart from the course and furtherance concept.

It was well within the province of the jury to weigh the defendant's confession as it would the testimony of others, accepting parts thereof and rejecting others if it so chose. Accepting all of it, the jury undoubtedly *could* have found a completed robbery before Blackmon returned alone and killed the victim, but such a conclusion was not mandatory (cf. *People v Nichols, supra,* pp 229, 230). The time and distance elements are most important. The proof is such that the homicide almost certainly took place between 12:26 P.M. and 1:30 P.M. The red shack was situated about one-half mile from the pump house, and the taxicab was recovered some three miles from both at or near where it had been spotted empty at around 1:30 P.M. Obviously some period of time was consumed before defendant and Blackmon could have reached the general area. That which defendant said transpired thereafter plainly required additional time and yet, according to him, there must still have remained sufficient time for Blackmon's supposed return to the scene, removal of the victim to another spot, a homicidal act with disposal of the body, and an abandonment of the taxicab. Given the distances involved, whether all of this could have been accomplished within the space of little more than an hour was plainly a matter for the jury to decide. Under the circumstances presented, the jury could properly conclude beyond a reasonable doubt that the killing to eliminate a witness and avoid future detection so closely followed the robbery in point of time and place as to be immediately connected therewith and, thus, within the commission and furtherance of that felony (cf. *People v La Belle,* 37 AD2d 658), or that the homicide took place while defendant was in immediate flight therefrom with the proceeds.

The judgment should be affirmed.

HERLIHY, P. J., GREENBLOTT, MAIN and REYNOLDS, JJ., concur.

Judgment affirmed.