■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PEREZ, Appellant.—Appeal from a judgment of the County Court of Ulster County, rendered September 10, 1975, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree (Penal Law, § 220.39). On the evening of January 18, 1975 police informant, Michael Rothman, a one-time heroin addict, was waiting in his father's confectionary store with three local police officers for the purpose of effectuating a prearranged heroin sale. The three officers, Phillips, Williams, and Craft, were secreted in an upstairs office with a view of the downstairs store area. While they were waiting for their target, the defendant, also a heroin user and an acquaintance of Rothman, together with a friend, Mustafa Daoud, passed in front of the store, looked in, recognized Rothman and entered the store. At trial Rothman testified that he asked defendant Perez if he had any "stuff" and defendant said "no" but pointed in the direction of his apartment. This testimony was corroborated by Officer Phillips except that Phillips testified that he heard Perez say he had to go get it at "his" or "the" apartment. The defendant testified that once he was inside the store Rothman asked him if he had any "stuff" and he answered "no" but that

his friend did. Rothman offered to let both defendant Perez and his friend "turn on" with part of the heroin. Whereupon, Daoud, according to Perez, agreed to go get the "stuff" and left the store with Perez and went to a backyard on Main Street in the Village of Ellenville and obtained the heroin. When Perez and Daoud returned to the store, only two officers were in the upstairs lookout, Officer Craft having exited with the primary target who had appeared while Perez and Daoud were absent. The record is clear that upon their return to the store defendant Perez said, "I brought the works. We are going to get off here." Daoud then extracted five foil packets containing heroin from a small *lozenge* box, gave them to Rothman who, in turn, handed Daoud $90. The police then announced themselves and arrested both Perez and Daoud.* After deliberating approximately six hours the Perez jury requested that the testimony of the three police officers be read back to them. The court, after commenting that the requested material was almost the whole content of the trial, inquired of the jury, "is there one particular policeman you wish?" Juror No. 1 replied, "Specifically the testimony that relates to the policemen overhearing of the conversations involved * * * conversations between the parties." The stenographer, following the court's instruction, read back some testimony to the jury. The court then asked, "Is that the conversation or subsequent conversation?" Juror No. 1 replied, "All conversations between the parties." Whereupon, the court said, "All right." When the court reporter had finished reading back the testimony the court said, "Those are the three police officers that testified concerning conversations * * * Does that answer the questions of the jury? That's all the testimony?" Defendant Perez's attorney then objected that the testimony as read back by the reporter was out of context, that the reporter rather than the Judge had determined what testimony was responsive to the jury's request and that such omissions were prejudicial. The court, after asking defendant's counsel to identify what matters were left out, to which counsel replied that not everything was read, noted the objection on the record and inquired of the jury if it was satisfied that "they heard what they wanted to hear?" The record fails to indicate any oral reply by any of the jurors. Whereupon, the court said, "Thank you. You may return to your deliberations." Thirty minutes later the jury returned with a verdict of guilty. This appeal ensued wherein defendant Perez claims he was deprived of a fair trial because (1) of the manner in which the court handled the jury's request for additional information, and (2) that the evidence as a whole was legally insufficient to establish guilt of the crime charged. CPL 310.30 permits a jury to request information or to pose inquiries and requires the court to give the jury "such requested information and instruction as the court deems proper." Failure to answer or to answer incorrectly is reversible error if there is prejudice to the defendant *(People v Jackson,* 20 NY2d 440, cert den 391 US 928; *People v Miller,* 6 NY2d 152). We find no prejudice to defendant Perez in the record. The defendant's contention that there is an absence of a transcript capable of being reviewed since there is no record of what was reread, is without merit. Obviously, the reporter cannot transcribe while he is reading from the original transcript, and while it might have been more proper if the court had identified on the record the points of beginning and ending of that part of the record ordered to be reread, we cannot say that all of the relevant testimony was not reread in light of the jury's failure to indicate dissatisfaction when, at the conclusion of the rereading, the court inquired, "was the

---

* Daoud pleaded guilty on June 23, 1975 and was sentenced to prison.

jury satisfied they heard what they wanted to hear?" Nor can we credit defendant's contention that he was unjustly prevented by the court from articulating those portions of the original transcript that the reporter failed to reread to the jury. Neither can we accept the argument that any deviation, no matter how slight, from completely providing the jury with everything it requests is reversible error. As the Court of Appeals stated in *People v Jackson* (20 NY2d 440, 454–455, supra), "It is not the law, however, that every failure to answer a question propounded by a jury gives rise to reversible error [citation omitted]. In each case, we must examine if the failure to answer the jury's question gives rise to a serious prejudice to the defendant's rights [citations omitted]". (See, also, *People v Fearon*, 13 NY2d 59.) We find no prejudice to defendant Perez's rights. We conclude also that the evidence proved defendant Perez's guilt beyond a reasonable doubt. Our conclusion of guilt is premised on a finding that the defendant was not an agent of Rothman, the buyer, but was, in fact, a principal in the transaction. While one who acts as the agent of the buyer cannot be convicted of selling narcotics *(People v Pulliam,* 28 AD2d 786; *People v Lindsey,* 16 AD2d 805, affd 12 NY2d 958), it is still a question of fact for the jury whether a defendant is a seller of drugs or merely the buyer's agent *(People v Robert "W",* 47 AD2d 793). Herein, it is uncontested that Perez knew that Rothman was a drug user; that Daoud had a cache of heroin; that Rothman wanted to buy; that he was going to be able to "take a trip" or "get off" after the sale was consummated, and, further, that Daoud and Perez brought to the final meeting the tools of the trade, a hypodermic needle, etc., that were going to permit all three to indulge in their common weakness. The jury could reasonably conclude that the defendant was more than a mere bystander, and that he was in fact a principal, or at least the agent of the seller, which is synonomous with being a principal (see *People v Hingerton,* 26 NY2d 790). Judgment affirmed. Koreman, P. J., Sweeney, Kane and Mahoney, JJ., concur; Larkin, J., not taking part.