Gabrielli, J.
(dissenting). I am compelled to dissent and vote for affirmance of the order of the Appellate Division sustaining defendant’s conviction of the crime of felony murder.
On October 4, 1975 the defendant and her paramour, John MacKenzie, went to Thelma J’s Boutique in West Hempstead where they talked with Mrs. Mait, the owner. While the defendant went through the process of trying on several dresses, none of which were purchased, MacKenzie sought directions for the bathroom which was located to the rear of the store and which he carefully surveyed for the purpose of accomplishing the upcoming burglary. Three days later at about 2:15 a.m. MacKenzie, accompanied by defendant, pulled into the rear alleyway behind Thelma J’s Boutique, and stopped the car with the car trunk facing the rear bathroom window. On the evening before, he had purchased an ankle holster for a gun he owned. While the defendant acted as a lookout, MacKenzie entered the boutique by the bathroom window and he then brought numerous articles of women’s clothing, including 240 ladies’ blouses, 16 pantsuits and 16 ladies’ coats, into the bathroom and gave these articles to defendant through the bathroom window. She, in turn, placed them in the trunk of the car. At this point Officer Hofknecht, who was on routine patrol duty accompanied by Officer Hayes, saw the car in the alley and spotted the open bathroom window to the boutique. They promptly called for assistance. They then saw the defendant hiding behind the car. Any questioning by the officers took from one to three minutes and was limited to inquiry of what she was doing. No arrest was then made.
Meanwhile Officer Matthew Giglio, who had just arrived pursuant to the radio call, went to the street at the request of the two other officers to "cover the front of the store” and, simultaneously, MacKenzie broke out the front of the store. Officer Giglio, who had not drawn his gun, attempted to stop MacKenzie but at that point MacKenzie, who was attempting to escape from the scene and who was exiting the store and moving away from it, shot Officer Giglio who later died from the wound inflicted by MacKenzie.
Defendant now contends that there should be a reversal in that the court erred in refusing to charge the jury in the following respects as requested by the defendant: (1) "You must determine whether or not the felony of burglary had *897 terminated at the time MacKenzie shot officer Giglio. If you find that officer Giglio had custody or had arrested MacKenzie * * * then you must find that there is no felony murder as the burglary was terminated”; and (2) if Irby (this defendant) "was in custody at the time when Officer Giglio was shot, then she would not be guilty of felony murder”.
We find no error or deficiency in the court’s main charge or its refusal to adopt these specific requests to charge. The defendant willingly and voluntarily involved herself, and indeed fully participated, in a burglary; and, by doing so, she necessarily accepted all the consequences of the felony murder committed either during the course of the burglary or during MacKenzie’s immediate flight from the burglary. Here, it cannot be reasonably argued that Officer Giglio’s momentary intervention as MacKenzie was exiting the boutique and fleeing from the burglary, terminated either the burglary or MacKenzie’s immediate flight therefrom. In People v Jackson (20 NY2d 440, 455), a unanimous court upheld the felony murder conviction upon facts significantly similar and really identical to those here present. There "[t]he defendant was intercepted by Patrolman Ramos as he was emerging from the hotel where the robbery was committed. A scuffle ensued and the police officer was shot only a few short feet from the premises. Thus, unities of time and place between the robbery and the homicide were such that it is inconceivable that a sensible jury would have acquitted”. (See, also, People v Moll, 26 AD2d 654, affd 21 NY2d 706.)
At this point, it is essential to carefully note that the defendant’s request to charge concerning the termination of the burglary was apparently premised upon the definition and the law of felony murder under the prior statute. Subdivision 2 of section 1044 of the former Penal Law provided that a felony murder be committed "by a person engaged in the commission of * * * a felony”. As revised and amended, the Penal Law which became effective September 1, 1967 provides one is guilty of felony murder when "[ajcting either alone or with one or more other persons, he commits or attempts to commit * * * burglary * * * and, in the course of and in furtherance of such crime or of immediate fight therefrom, he, or another participant, if there be any, causes the death of a person” (Penal Law, § 125.25, subd 3; emphasis supplied). It is important to further note that this revision was made in order to "eliminate many technical issues which inevitably *898 arise when it is essential to determine whether the underlying felony was completed at the time of the killing or whether it was still in progress” (Practice Commentaries, McKinney’s Con Laws of NY, Book 39, Penal Law, § 125.25). This court stated in People v Gladman (41 NY2d 123, 127) that "[t]he later New York cases indicate some dissatisfaction with the strict legal rules that had developed and tended to leave the question of escape killings to the jury as a question of fact, under appropriate instructions. The change was to point out 'generally that the killing to be felony murder must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime (Dolan v. People, 64 N. Y. 485); that escape may, under certain unities of time, manner and place, be a matter so immediately connected with the crime as to be part of its commission (People v. Gior, 197 N. Y. 152); but that where [not as in this case] there is no reasonable doubt of a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent. (People v. Marwig, 227 N. Y. 382).’ (People v Walsh, 262 NY 140, 148, supra; People v Jackson, 20 NY2d 440, 454, cert den 391 US 928.)” In Gladman, the court, in its analysis, referred to People v Carter (50 AD2d 174, 176) where the Third Department stated: " '[i]t is possible to have a factual situation in a case of felonious homicide where only one conclusion can be drawn as to whether or not the homicide took place during the commission of the felony’ (People v Walsh, 262 NY 140, 147). Generally, however, the matter is a fact question and only rarely may it be decided by the trial court as a matter of law (People v Walsh, supra, p 147; cf. People v Jackson, 20 NY2d 440, 454; People v Sobieskoda, 235 NY 411, 420; People v Nichols, 230 NY 221).” (Emphasis supplied.)
An examination of the first request made by defendant made no mention whatsoever of felony murder liability in the event the killing took place during "immediate flight” and if couched in the terms requested by defendant, it would have been an erroneous charge. That request spoke only to an instruction that the jury were required to acquit if they found the burglary alone had terminated at the moment of the killing.
Advancing one further step, even if the request could be *899 construed as an instruction to acquit the defendant if they found that both the burglary and the immediate flight therefrom had terminated before the killing, the request was unnecessary for that charge had already been given as noted by the instructions given by the court in the main charge wherein the jurors were clearly instructed on the law. First, the Trial Judge read the indictment relating to the felony murder charge and then further paraphrased it stating that she was charged with that crime by "aiding and abetting and being aided and abetted by John MacKenzie * * * on or about October 7, 1975, committed the crime of burglary, and in the course of and in furtherance of such crime, and in immediate flight therefrom, caused the death of Matthew Giglio, a nonparticipant in the crime * * * [specifically, in] the immediate flight therefrom, John MacKenzie shot Matthew Giglio”. The trial court then explained that: "In deciding whether a felony murder has been committed, it makes no difference whether the shooting actually occurred in the course of or in the furtherance of the burglary alleged, or whether it occurred in the immediate flight therefrom. The elements of the crime of murder in the second degree under this count of the indictment are: (1) that at the time and place set forth in the indictment the defendant either acted alone or with one or more person, each aiding and abetting the other, committed or attempted to commit a burglary. (2) That in the course of and in furtherance of the burglary, or of the immediate flight therefrom, the defendant, or another participant in the crime, caused the death of Matthew Giglio. (3) That Matthew Giglio was not a participant in the underlying crime of burglary. If you are not satisfied that the People have proven each and every element beyond a reasonable doubt, then you must find the defendant not guilty of murder in the second degree.”
Addressing the second requested charge relating to defendant’s freedom from criminal liability even if she was in custody at the time Officer Giglio was shot, we are reminded that such a request, absent any reference to the statutory liability for "immediate flight” from a felony, would also have been improper. Going one step further, however, (which we need not do) and assuming that the request contained a direction that defendant should be acquitted because such custody would have terminated both the underlying felony and immediate flight therefrom, such a charge would obviously have been improper. Even though the defendant had no *900 intention of abandoning the crime voluntarily, and even though she was responding to questions pertaining to her identity when conversing with the two officers behind the car,* the majority would hold that she could thus be absolved from criminal liability for the actions of the other participant in the crime she helped to commit. This conclusion is contrary to all precedent. (See People v Moll, 21 NY2d 706, supra; People v Keshner, 304 NY 968). In Keshner, the defendant’s conviction of felony murder was sustained by this court. There, defendant’s accomplices had committed arson resulting in the death of a policeman. Prior thereto, defendant was outside the building and he was placed under arrest. Shortly thereafter the fire erupted and the victim’s death ensued. The court rejected defendant’s argument that, because the underlying crime of arson had terminated before the actual fire and resulting death, and because he was arrested prior to the officer’s death, he could not be held responsible. As noted, this court rejected his contention out of hand.
Quite apart from the analysis made of the case before us up to this point, we emphasize that indeed the court did charge, as noted above, that the jury were required to find as a fact whether the murder was in furtherance of the burglary or of the immediate flight. The court did not decide that the homicide had occurred during the course of the burglary as a matter of law. An examination of the charge will promptly reveal that this question was left for the jury to decide. Actually, the questions of participation, termination and of the immediate flight therefrom were all left for the jury to determine. To adopt and embrace defendant’s convoluted argument and interpretation of the felony murder statute would not only defy ordinary logic but would do utter violence to the specific language of the statute and the avowed intent of the Legislature.
Both at common law and by statute in New York (Penal Law, § 125.25) a felonious homicide is considered murder by operation of the legal fiction of transferred intent, and the homicide is characterized as having been committed with malice prepense (People v Luscomb, 292 NY 390, 395; People v Hüter, 184 NY 237; Mansell and Herbert’s Case, 2 Dyer 128.b; 4 Blackstone, Commentaries, 198). "It is the malice of the *901 underlying felony that is attributed to the felon” (People v Wood, 8 NY2d 48, 51). While the mens rea for intentional homicide may be inferred from an intent to commit the felony, the actus reus is proven inferentially as well. Sharing a felonious venture with one who later kills someone, and doing so with the knowledge that a participant is armed, exposes one to criminal liability for the homicide, particularly if it occurred during the commission of the felonious act or in the immediate flight therefrom.
The majority has not addressed the other assigned errors, all of which are without any merit and, hence, they need not be addressed.
In all these circumstances, the defendant’s conviction of the felony murder of the police officer should be upheld, and the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur; Judge Gabrielli, dissents in part and votes to affirm in a separate opinion.
Order modified and case remitted to Nassau County Court for a new trial on the felony murder, count in accordance with the memorandum herein and, as so modified, affirmed.

 Defendant was questioned rather casually regarding only her identity for from one to three minutes, and there is no dispute that she was not physically restrained and, indeed, she was left unattended when the two officers heard a shot.