THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY HERNANDEZ, Appellant. [838 NYS2d 554]—

Judgment, Supreme Court, Bronx County (David Stadtmauer, J.), rendered January 27, 2004, convicting defendant, after a jury trial, of murder in the second degree (depraved indiffer-

ence) and sentencing him to an indeterminate term of 25 years to life imprisonment, reversed, as a matter of discretion in the interest of justice, the conviction vacated, that count of the indictment dismissed, and the matter remanded for a new trial on the remaining charges not reached by the jury.

The undisputed trial evidence established that around 2:00 A.M. on the morning of December 23, 2000, as he was leaving a party with some friends, Juan Melendez was approached by defendant and his codefendant, Jason Lopez. According to one eyewitness, defendant, who was holding a black gun, put the gun to Melendez's head and said, "Give me your chain. I'm not playing." As Melendez was taking off the chain, defendant grabbed the medallion to "help take it off," whereupon Melendez began to struggle with defendant and shots were fired. Melendez, who was fatally wounded, suffered four gunshot wounds, two to the back of the neck, one to the left side of the chest, and one grazing wound to the left side of the back of his head. Defendant was arrested in Miami a week later and gave the police two inculpatory statements, one written and one stenographically recorded. In his first statement, defendant admitted that after a brief visit to the party he went outside to smoke. His codefendant then came out and told him that "this guy was eyeballing him. Jason went to 174th Street and University and came back with the gun. At that point Jason told me that I'm going to rob that mother fucker. Then he past [*sic*] me the gun and I stepped to the guy. Then the guy started to fight me and the gun went off. Then I saw Jason take the chain and I ran to the projects and Jason also ran into the projects." In his second statement, defendant essentially gave the same account, stating, in pertinent part: "Then he calls me over after I finish my blunt and tells me he's going to fucking rob this fucking guy over here, if I want to go with him, and him knowing that I was under the influence of alcohol, I went with him. He handed me over a .25, and he had another weapon on him, and when I went to step to the guy, and I talked to him, he grabs me and he was grabbing me and the gun let off. I was scared. I ran and before I ran, I seen Jason take his chain off his neck, and then he ran, too. We ran towards the projects, but we went two separate ways, and I never heard from him again."

The jury was instructed to consider the following charges: murder in the first degree (intentional murder in the course of a robbery), intentional murder, depraved indifference murder, felony murder, two counts of robbery in the first degree, manslaughter in the first and second degrees, and criminal possession of a weapon in the second and third degrees. Defendant

was acquitted of the first two charges, murder in the first degree and intentional murder, but convicted of depraved indifference murder. Pursuant to the court's instructions, the jury did not reach the remaining charges.

The People do not take issue with defendant's argument that the evidence at trial was insufficient to convict him of depraved indifference murder. Instead, they contend that such argument is unpreserved inasmuch as defendant never raised this issue at trial, having made only a general motion for a trial order of dismissal, and that we should not exercise our discretion to review it in the interest of justice where the evidence overwhelmingly established that defendant killed Mr. Melendez. Nevertheless, we exercise such discretion and find that although the evidence at trial might support a conclusion that defendant either deliberately shot the victim in the course of a robbery or did so accidentally when the victim began to struggle during the robbery (*see People v Dudley*, 31 AD3d 264 [2006], *lv denied* 7 NY3d 866 [2006]), there is simply no evidence from which to conclude that defendant acted under circumstances evincing a depraved indifference to human life, which requires more than a showing of the gravity of the risk of death (Penal Law § 125.25 [2]; *People v Suarez*, 6 NY3d 202 [2005]).

Inasmuch as the jury was instructed to consider the three theories of murder (intentional, depraved indifference and felony murder) in the alternative and in order and, if it found defendant guilty on any of the first two theories, it was to stop deliberations and not consider the remaining charges, it was never given an opportunity to return a verdict on the felony murder count or any other remaining charges, and retrial on those unreached counts does not violate double jeopardy (*see People v Jackson*, 20 NY2d 440, 448-449, 451-452 [1967], *cert denied* 391 US 928 [1968]). Despite the dissent's double jeopardy concerns regarding a retrial on the first-degree manslaughter count and its reliance on *People v Biggs* (1 NY3d 225, 230 [2003]), this Court recently distinguished *Biggs* and held that where, as here, the unresolved first-degree manslaughter count was separately charged in the indictment, a retrial on that count is permitted by CPL 40.30 (3) (*People v Suarez*, 40 AD3d 143 [2007]).

We have considered defendant's remaining contentions and find them unpersuasive. Concur—Andrias, Marlow and Nardelli, JJ.

Tom, J.P., and Saxe, J., dissent in part in a memorandum by Tom, J.P., as follows: My dissent is confined to the majority's remand for further prosecution on the count of manslaughter in

the first degree. That disposition violates the constitutional protection against double jeopardy.

"The prohibition on double jeopardy protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense" (*Boyd v Meachum*, 77 F3d 60, 63 [2d Cir 1996], *cert denied sub nom. Boyd v Armstrong*, 519 US 838 [1996]). The Double Jeopardy Clause, as pertinent herein, bars further prosecution unless the crime of which defendant was acquitted and the crime for which he is to be retried are distinct offenses. Under *Blockburger v United States* (284 US 299, 304 [1932]), the test is "whether each provision requires proof of a fact which the other does not."

For double jeopardy purposes, first-degree manslaughter is the same offense as intentional second-degree murder because " 'the lesser offense . . . requires no proof beyond that which is required for conviction of the greater' " (*People v Biggs*, 1 NY3d 225, 230 [2003], quoting *Brown v Ohio*, 432 US 161, 168 [1977]). It is clear that acquittal on a count of an indictment—including its dismissal on the ground of insufficient evidence—"protects a defendant against additional prosecution for such count" (*Biggs*, 1 NY3d at 229, citing *Smalis v Pennsylvania*, 476 US 140, 142 [1986]; *Burks v United States*, 437 US 1, 18 [1978]; and *People v Mayo*, 48 NY2d 245, 249 [1979]). Thus, following defendant's acquittal of intentional murder, the Double Jeopardy Clause bars his prosecution for first-degree manslaughter whether he is again tried under the original indictment or under a subsequent indictment (*see e.g. Corey v District Ct. of Vt., Unit No. 1, Rutland Circuit*, 917 F2d 88, 89-90 [2d Cir 1990] [double jeopardy constitutes an "unequivocal bar against a second trial after a judgment of acquittal"]).

While I disagree that defendant is subject to further prosecution for manslaughter in the first degree, I concur that he is subject to prosecution on the felony murder count despite some lingering uncertainty as to whether it is the same offense, under *Blockburger*, as intentional murder. The uncertainty persists because the Court of Appeals, while noting that its decision in *People v Leonti* (18 NY2d 384 [1966], *cert denied* 389 US 1007 [1967]) "lends support to the theory that felony murder and premeditated murder are two offenses . . . , has never directly decided whether felony murder and premeditated murder constitute a single offense or multiple offenses for the purposes of double jeopardy" (*People v Jackson*, 20 NY2d 440, 451 [1967], *cert denied* 391 US 928 [1968]). While the Court purported not to decide the question in *Jackson*, upon habeas review, the

Second Circuit stated that the Court of Appeals had indeed construed former New York Penal Law § 1044 "to mean, in effect, that premeditated and felony murder constitute but a single offense" (*United States ex rel. Jackson v Follette*, 462 F2d 1041, 1048 [2d Cir 1972], *cert denied* 409 US 1045 [1972]). However, later New York cases have adhered to *Leonti*, construing the crimes as distinct offenses (*see e.g. People v Daniels*, 35 AD3d 756 [2006]; *People v Wade*, 146 AD2d 589, 590 [1989], *lv denied* 73 NY2d 1023 [1989]).

In this case, as in *Jackson* (20 NY2d at 451-452), the trial court instructed the jury to consider the submitted crimes "in the alternative, not the order in which I charged them," stating that if the jury found defendant guilty, "it may be only as to one of the crimes, not more than." The jury acquitted defendant of first-degree murder and second-degree intentional murder, finding him guilty of second-degree depraved indifference murder; however, the jury did not have occasion to consider the felony murder count (*Jackson*, 20 NY2d at 452 ["Since the jury was instructed to render only one verdict, it had no reason to consider the felony murder charge once it found the defendant guilty of premeditated murder"]). Thus, "[w]e cannot say that the jury's silence on the felony murder theory had the effect of acquitting [defendant] of that theory" (*id.*), and no acquittal bars defendant's further prosecution for felony murder. In sum, except for the conviction for depraved indifference murder, which has been reversed, and the offenses of which defendant has been acquitted, including the count of manslaughter in the first degree as a lesser included offense of intentional second-degree murder, defendant may be prosecuted for the remaining counts in the indictment.