**Sam ORTIZ and Joseph Ortiz, Petitioners,**

**v.**

**The DISTRICT COURT In and For the COUNTY OF LAS ANIMAS and the Honorable Harry Sayre, One of the Judges Thereof, Respondents.**

**No. 80SA165.**

Supreme Court of Colorado, En Banc.

March 30, 1981.

J. Gregory Walta, Colorado State Public Defender, Joseph G. Bruce, Deputy State Public Defender, Trinidad, for petitioners.

Harry R. Sayre, District Judge, pro se.

DUBOFSKY, Justice.

In response to a petition filed under C.A.R. 21, we issued a Rule to Show Cause why the respondent district court should not dismiss informations charging the petitioners, Sam Ortiz and Joseph Ortiz, with first-degree and second-degree assault and crime of violence. We now make the Rule absolute.

On October 5, 1979, a jury found the petitioners guilty of menacing[1] Troy Gutierrez. This was one of several counts arising from an altercation between the petitioners and three alleged victims. The instructions and verdict forms submitted to the jury charged petitioners with the following offenses:

second-degree assault, section 18–3–203, C.R.S.1973 (1978 Repl.Vol. 8) against Troy Gutierrez, on February 24, 1979;

second-degree assault, section 18–3–203, against Max Aragon, on February 24, 1979;

second-degree assault, section 18–3–203, against James Sanchez, on February 24, 1979;

third-degree assault, section 18–3–204, C.R.S.1973 (1978 Repl.Vol. 8); no victim specified;

menacing, section 18–3–206, C.R.S.1973 (1978 Repl.Vol. 8) against Troy Gutierrez;[2]

special verdicts on using a deadly weapon during the commission of each offense of

second-degree assault, section 16–11–309, C.R.S.1973 (1978 Repl.Vol. 8).[3]

The trial court instructed the jury as follows:

"If you are not satisfied beyond a reasonable doubt that the defendants are guilty of the offense charged, they may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish their guilt of such lesser offense beyond a reasonable doubt.

The offense of Assault in the Second Degree, as charged in the Information in this case necessarily includes the lesser offenses of Assault in the Third Degree, and Felony Menacing.

\*        \*        \*        \*        \*        \*

*. . . you are not, in any event, to find the defendants, Joseph Ortiz and Sam Ortiz guilty of more than one of the following offenses*: Assault in the Second Degree, Assault in the Third Degree, Felony Menacing. Of course, you may find the defendants not guilty of all of these offenses. If you find the defendants guilty of Assault in the Second Degree, then you must make a specific finding as to whether or not the said crime is a crime of violence as defined in these instructions."

(Emphasis added.)

The trial court gave the jury a separate set of verdict forms for each petitioner. The jury returned verdicts finding both petitioners guilty of the lesser offense of felony menacing against Troy Gutierrez, but did not return any other verdicts.[4]

---

**1.** Section 18–3–206, C.R.S.1973 (1978 Repl.Vol. 8).

**2.** After completion of the evidence, the court, on the district attorney's motion and over the petitioners' objection, instructed the jury that second-degree assault included the lesser offenses of felony menacing and third-degree assault.

**3.** The complete trial court record is not before us. Therefore we cannot determine why only one victim was included on the menacing ver-

dict form or why the verdict form for third-degree assault did not specify a victim.

**4.** The jury apparently followed the literal mandate of the instruction and returned a verdict against the petitioners on only one offense. All of the other verdict forms were returned unsigned. The trial judge probably intended to limit the jury to one verdict of guilty with respect to each of the three alleged victims, rather than one verdict of guilty in total, but no action was taken to correct the lack of a full set of signed verdicts.

From the record before us it appears that the court discharged the jury without the jury having resolved the other charges. The petitioners then moved for a judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial, based in part on the erroneous submission of the menacing charge to the jury as a lesser included offense of second-degree assault. After the district attorney confessed the motion for a new trial,[5] the People, on December 11, 1979, filed new informations charging each petitioner with second-degree assault, third-degree assault, menacing, and crime of violence against each of the three alleged victims. These new charges were based on the same incident which gave rise to the original charges and jury trial. The petitioners then moved to dismiss the second informations on grounds of double jeopardy. The trial court granted the motion to dismiss the counts of felony menacing but denied the remainder of the motion.

We issued a Rule to Show Cause why the remaining charges against the petitioners should not be dismissed. We now make the Rule absolute. Retrial of the petitioners is barred by the federal and state constitutional prohibitions against twice putting the accused in jeopardy for the same offense. *U.S. Const.* amend. V; *Colo.Const.* Art. II, Sec. 18. The double jeopardy clauses proscribe retrial both because the felony menacing convictions in the first trial impliedly acquitted the petitioners of one of the charges in the new informations (the second-degree assault charge relating to Troy Gutierrez) and because the petitioners have a legitimate interest in having the charges against them determined by the jury first impaneled to hear their case.

**5.** The confession of error was correct. *See People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974).

**6.** The Fifth Amendment's proscription of double jeopardy is made applicable to the states by *U.S. Const.* amend. XIV. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**7.** *Colo.Const.* Art. II, Sec. 18 reads:

## I.

The double jeopardy clauses of the United States and Colorado Constitutions provide that no person shall be twice put in jeopardy for the same offense. *U.S. Const.* amend. V;[6] *Colo.Const.* Art. II, Sec. 18.[7] These provisions prohibit retrial of the petitioners on the charge of second-degree assault against Troy Gutierrez because the verdicts returned during the first trial convicting the petitioners of menacing Gutierrez impliedly acquitted them of second-degree assault against him. *See* section 18–1–301(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

In *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the United States Supreme Court held that a defendant tried for a greater offense (first-degree murder) but found guilty by a jury of a lesser offense included in the greater (second-degree murder), is impliedly acquitted of the greater crime and cannot be retried for that offense. For purposes of former jeopardy, the conviction of the lesser offense is treated no differently "than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of [the greater offense] but guilty of [the lesser offense].'" 355 U.S. at 191, 78 S.Ct. at 225, 2 L.Ed.2d at 206; *see also Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Here, the court's instruction gave the jury the choice of finding the petitioners guilty of any one of the following crimes: assault in the second-degree, felony menacing, or assault in the third-degree. The jury's verdict of guilty of felony menacing was an implicit acquittal of the charge of assault in the second-degree.[8]

"No person shall be compelled to testify against himself in a criminal case nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

**8.** For purposes of double jeopardy, it is immaterial whether the offense of felony menacing was technically a lesser included offense of

## II.

Retrial, in this case, is barred not only by the doctrine of implied acquittal, but by the fundamental principles underlying the constitutional prohibitions against double jeopardy. The petitioners have been tried once on the charges upon which the People seek to try them again. The United States Supreme Court in *Green v. United States, supra,* 355 U.S. at 187–188, 78 S.Ct. at 223, 2 L.Ed.2d at 204, portrayed the constitutional prohibition against double jeopardy as:

"designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." [9]

■■■ The controlling double jeopardy principle here is that which safeguards the accused's "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Termination of a criminal trial before the ultimate issue of guilt has been decided deprives the accused of his opportunity to have the first jury resolve the dispute. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Only if a court properly declares a mistrial may a criminal trial be terminated before that issue has been resolved.

■■■ It is settled law that a criminal trial may be terminated if the jury is deadlocked and cannot reach a verdict. Reprosecution of an accused under these circumstances is not barred by double jeopardy doctrine. *Illinois v. Sommerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn, supra; Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Wade v. Hunter, supra; Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *United States v. Perez,* 9 Wheat. 580, 6 L.Ed. 165 (1824). The test for determining when a jury may be discharged from giving a verdict enunciated in *United States v. Perez, supra,* has been followed consistently by the United States Supreme Court:

" 'We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to find all the circumstances, which would render it proper to interfere.' "

*Illinois v. Sommerville, supra,* 410 U.S. at 461, 93 S.Ct. at 1069, 35 L.Ed.2d at 429 (quoting from *United States v. Perez, supra* ). Although explicit findings on the presence of manifest necessity are not required, the record must provide a "sufficient justification" for the judge's termination of the proceedings short of a verdict. *See, e. g., Arizona v. Washington, supra; Espinoza v. District Court,* 180 Colo. 391, 506 P.2d 131 (1973); *Maes v. District Court,* 180 Colo. 169, 503 P.2d 621 (1972); *Barriner*

---

assault in the second-degree. The dispositive factor is not the validity of the felony menacing conviction, but, rather, the jury's refusal to find the petitioner guilty of assault in the second-degree. An error in submitting felony menacing to the jury as a "lesser" offense does not weaken the inference that the jury intended to acquit petitioners of the "greater" offense of second-degree assault. Section 18–1–301(1)(a),

C.R.S.1973 (1978 Repl.Vol. 8); *Green v. United States, supra; People v. Lohbauer,* 107 Cal. App.3d 204, 165 Cal.Rptr. 436 (1980); *In re Hess,* 45 Cal.2d 171, 288 P.2d 5 (1955).

**9.** For an exhaustive summary of double jeopardy principles, *see United States v. DiFrancesco,* —— U.S. ——, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

*v. District Court,* 174 Colo. 447, 484 P.2d 774 (1971).

In the present case, the petitioners had completed a full trial and all charges had been submitted to the jury for a decision. When a single verdict was returned signed by the foreman, it must have been apparent to the prosecution, the defense, and the trial judge that the jury had not explicitly decided the issue of petitioners' guilt or innocence of each of the charges. At that point the judge could have reinstructed the jury, furnished them with appropriate verdict forms, and required them to continue their deliberations. In the absence of a record we cannot ascertain whether this procedure was suggested by counsel or considered by the court. In any event, it was not adopted and the jury was discharged having returned a verdict on only one of the numerous charges upon which the petitioners were being tried.

The petitioners were entitled to the verdict of that jury. *Illinois v. Sommerville, supra.* The facts here resemble those in *United States v. Jorn, supra,*[10] and we conclude, as the United States Supreme Court did there, that there was no manifest necessity for discharge of the jury. *See* section 18–1–301(1)(d) and (2)(b)(IV), C.R.S.1973 (1978 Repl.Vol. 8). Although it is unclear what the trial court in this case did, its actions were tantamount to an improper termination of the proceedings. Moreover, the harassment to which a second prosecution would subject the petitioners is greater, not less, when the basis for the governmental action remains shrouded in mystery. Therefore, the petitioners' requested protection from reprosecution is granted.

### III.

The petitioners moved for a judgment of acquittal or, in the alternative, for a new trial. The respondent contends that the alternative motion for a new trial waived the petitioners' double jeopardy defense to the charges other than the felony menacing counts.

A motion for a new trial is a prerequisite for appeal. Crim.P. 33(a). It cannot be construed as anything other than a request asking the trial judge to reconsider specific, alleged errors in the proceedings and a procedure for preserving those errors for appellate review. We do not view a motion for a new trial as a relinquishment of the right to invoke double jeopardy guarantees against retrial of the charges upon which no verdicts were returned. Were we to so hold, we would condition an appeal of a conviction of one offense on a "coerced surrender of a valid plea of former jeopardy on another offense," and in so doing would exact "a forfeiture in plain conflict with the constitutional bar against double jeopardy." *See Green v. United States, supra,* 355 U.S. at 194, 78 S.Ct. at 227, 2 L.Ed.2d at 208. *See also Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (defendant did not "waive" his right to judgment of acquittal by moving for a new trial).

We hold that the petitioners' motion for a new trial did not waive their protection against double jeopardy and that their double jeopardy protection extends to all of the charges filed by the People in the second informations.

The Rule is made absolute.

ROVIRA, J., dissents.

ROVIRA, Justice, dissenting.

I respectfully dissent.

10. In *United States v. Jorn,* during trial, at the suggestion of defense counsel, the judge advised government taxpayer-witnesses of their constitutional rights prior to their testimony in criminal proceedings. The judge, fearing that the witnesses had not been properly advised by Internal Revenue officers during the investigation, on his own motion and without consulting the prosecution or the defense, aborted the trial. Before retrial, the court granted the defendant's motion to dismiss the information on grounds of former jeopardy. The United States Supreme Court concluded that the trial judge had abused his discretion in declaring a mistrial, particularly in view of the abruptness of the ruling and the failure to consider alternatives such as a continuance to permit the witnesses to obtain counsel. Accordingly, the double jeopardy protection of the Constitution prohibited retrial.

After a trial to jury, the petitioners were convicted of felony menacing in violation of section 18–3–206, C.R.S.1973 (now in 1978 Repl.Vol. 8). The jury had been instructed on menacing as a lesser included offense of second-degree assault over the objection of the petitioners. The jury was specifically instructed not to find them guilty of "more than one" of the offenses of assault in the second degree, assault in the third degree, or menacing. *See Colo.J.I.* (Crim.) 36:6. After the judgment of conviction was entered, the petitioners moved for a new trial, arguing that the trial court had committed an error in law by instructing the jury that menacing was a lesser included offense of second-degree assault.

The trial court reversed its prior judgment in response to the petitioners' motion and ordered a new trial. They then filed this original proceeding seeking a writ in the nature of prohibition under C.A.R. 21 in order to bar further trial. No one disputes that the trial court committed error when it first determined the issue of lesser inclusion of charges. *See People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974). Menacing was not a lesser included offense of second-degree assault.

The majority concludes that the petitioners may not be retried because of double jeopardy protections guaranteed to them by the Colorado Constitution art. II, sec. 18, and by the United States Constitution amend. V. In my opinion, the majority is entirely misguided in its reliance on the Colorado Constitution. Its interpretation of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119 (1957), though perhaps less obviously mistaken, is premised on a misconception and ignores society's legitimate interest in accurate determinations of criminal guilt by means of fair trials. *See United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

## I.

The trial court reversed itself when it discovered that it had committed error in the defendants' previous trial. Their prior conviction for menacing was necessarily vacated as part of the procedure for granting a new trial.

It is axiomatic that a former prosecution does not bar a retrial if it resulted "in a judgment of conviction that was set aside, reversed, or vacated upon appeal or in any other subsequent judicial proceeding." Section 18–1–304(1)(c), C.R.S.1973 (1978 Repl. Vol. 8). The Colorado Constitution art. II, sec. 18, plainly provides that if a "judgment be reversed for error at law, *the accused shall not be deemed to have been in jeopardy.*" (Emphasis added.)

Under our state constitution, retrial after reversal of a conviction, except on grounds of insufficiency of evidence, creates no second jeopardy for a criminal defendant. He stands in the same position as if no prior trial had taken place. The verdict and judgment formerly rendered are a nullity and, thus, of no legal effect. *Stafford v. People*, 165 Colo. 328, 438 P.2d 696 (1968); *Young v. People*, 54 Colo. 293, 130 P. 1011 (1913).

The plain language of the state constitution means that even a conviction for a lesser included offense, where reversed on appeal for error in law, does not bar retrial of the greater offense on which the defendant obtained an "implied acquittal." *Young v. People, supra. See Green v. United States, supra* (Frankfurter, J., dissenting). It goes without saying that this principle, although clear in the Colorado constitution, has been interpreted as violating the federal constitution amend. V, as applied to the states through *U.S. Const.* amend. XIV. *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Green v. United States, supra. See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

In the context of the present case, where the defendants' conviction was *not* for a lesser included offense, the majority, nonetheless, deems the petitioners to have been in jeopardy despite the state constitution's unequivocal and contradictory mandate. I believe that a sound constitutional jurisprudence requires that we recognize the bound-

aries of our decision-making power. We are not free simply to ignore the explicit limitations set down in our state constitution. We should at least feel somewhat inhibited to do so by mere fiat.

In the present case, of course, we are free to interpret the independent requirements of the federal constitution. In my opinion, there is no conflict here between the double jeopardy principles embodied in the state constitution and those implicit in the federal constitution as interpreted in *Green v. United States, supra.* But if the *Colo. Const.* art. II, sec. 18, were alone applied in this case, the petitioners' writ would have to be discharged. On the other hand, if the Colorado constitution is not controlling, this must be because it is in conflict with the United States Constitution as interpreted by the United States Supreme Court. The majority's conclusory dismissal of our state's established limitation of the double jeopardy protection can only be understood in light of its interpretation of what the federal constitution requires. I disagree with this interpretation.

## II.

The double jeopardy clause of *U.S.Const.* amend. V states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The decisional law interpreting these simple words is a

"veritable Sargosso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States,* —— U.S. ——, ——, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275, (1981). The question of whether double jeopardy is applicable under the circumstances of this particular case is not subject to facile or routine answers.

In *Green v. United States, supra,* the United States Supreme Court decided that if a defendant is convicted of a lesser degree of a crime and the jury is silent as to a higher degree of the same crime, he cannot be retried for the higher degree offense if he successfully appeals from his conviction of the lesser degree. The jury's silence on the higher charge is interpreted as an implicit acquittal. However, in the present case, the usual inference is initially questionable because menacing, in actuality, was not a lesser included offense of the crime of second-degree assault with which the petitioners were charged.

As I see it, this court should examine the record of the former proceeding, as presented to it for review, and interpret all of its parts as a whole before determining the meaning to be assigned the jury's silence on second- and third-degree assault charges.[1] *People v. Keagle,* 37 Ill.2d 96, 224 N.E.2d 834 (1967). A jury verdict of guilt on one charge does not automatically convert a jury's silence on other charges into implicit

1. The record provided to us in this original proceeding has been scrutinized to a remarkable degree. I am as much at a loss as my colleagues to understand why the jury was provided verdict forms on menacing only as to the victim Gutierrez. Contrary to the majority, however, I do not believe we should speculate why. Our practice in original proceedings has been to put the burden of establishing error upon the one who claims it took place and based upon the record presented for review. Any deficiencies in this record seem properly accountable to the petitioners, not to the People.

As the majority points out, "the petitioners had completed a full trial and all charges had been submitted to the jury for a decision." The jury was instructed in apparent accord with the rule established in *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974), that a jury cannot convict a defendant of more than one offense in a series of greater and lesser included

offenses upon which it must reflect. *See People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973). The jury then "followed the literal mandate of the instruction and returned a verdict against the petitioners on only one offense." *See* the opinion of the majority, *supra,* n. 4. It is hard for me to see, therefore, how the jury's failure to resolve other charges against the petitioners amounts to an implicit acquittal of these charges.

One manner of instructing the jury which, indeed, would eliminate ambiguities and uncertainties in their verdict would be for a trial court to require the jury to find a defendant not guilty of the greater offense before it proceeds to consider the lesser. *See State v. Troynack,* 174 Conn. 89, 384 A.2d 326 (1977); *Pope v. State,* 509 S.W.2d 593 (Tex.Cr.App.1974). Such an instruction ensures that the jury is given a full opportunity to consider the factual guilt or innocence of the defendant. *See Green v. United States, supra.*

acquittals. The jury must have been afforded a "full opportunity to return a verdict" on charges for which it, instead, reached a verdict on another. *Green v. United States, supra,* 355 U.S. at 191, 78 S.Ct. at 225. Where this opportunity is denied to the jury, the double jeopardy clause does not bar subsequent prosecutions. *United States ex rel. Jackson v. Follette,* 462 F.2d 1041 (2d Cir. 1972); *People v. Jackson,* 20 N.Y.2d 440, 231 N.E.2d 722, 285 N.Y.S.2d 8 (1967), *cert. denied,* 391 U.S. 928, 88 S.Ct. 1815, 20 L.Ed.2d 668 (1968); *People v. Keagle, supra. See Price v. Georgia, supra; Cichos v. Indiana,* 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966).

The most significant feature of the record presented to us here is the manner in which the jury was instructed to consider the substantive charges against the defendants. The jury was told to render only one verdict from among the offenses of second-degree assault, third-degree assault, and menacing:

"If you are not satisfied beyond a reasonable doubt that the defendants are guilty of the offense charged, they may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish their guilt of such lesser offense beyond a reasonable doubt.

"The offense of Assault in the Second Degree, as charged in the Information in this case necessarily includes the lesser offenses of Assault in the Third Degree, and Felony Menacing...

"If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendants ... committed the crime charged, or a lesser included offense, you should so find the defendants guilty, and should so state in your verdict; if you do not so find, you should find the defendants not guilty and should so state in your verdict; *you are not, in any event to find the defendants ... guilty of more than one of the following offenses: Assault in the Second Degree, Assault in the Third Degree, Felony Men-*

*acing.* Of course, you may find the defendants not guilty of all of these offenses ..." (Emphasis added.)

*See Colo. J. I.* (Crim.) 36:6. *See also* section 18–1–408(1)(a), C.R.S.1973 (1978 Repl.Vol. 8); *People v. Hancock, supra,* n. 1. The obvious effect of this instruction was that, regardless of the jury's opinion of the defendants' possible guilt for other offenses, it could return only one verdict of guilt. The jury was not advised about the order in which it should consider the respective offenses. Consequently, its verdict carries no logical implications of acquittal on the offenses for which it was silent. *Cf., State v. Troynack, supra,* n. 1. The jury had no reason to weigh the petitioners' guilt or innocence of other charges once it found them guilty of menacing. More importantly, even if it found them factually guilty of other charges, it could not express this determination. It is perhaps arguable that the jury instruction focused attention on second-degree assault in such a way that the jury would consider it prior to their consideration of other offenses. But even in this case, there would be no logical basis to conclude that the jury considered the petitioners' guilt or innocence of third-degree assault before it found them guilty of menacing. Under these circumstances, I am convinced that the jury's silence implies no acquittal of the defendants on other charges. *See, e. g., People v. Jackson, supra.*

The majority claims that retrial in this case is barred by "fundamental principles underlying the constitutional prohibitions against double jeopardy." Nevertheless, the case law upon which it draws to establish this conclusion is derived from situations where a mistrial has been declared without any "manifest necessity" or in opposition to the "ends of public justice." *See Illinois v. Sommerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez,* 9 Wheat. 580, 6 L.Ed. 165 (1824). The circumstances of this case make the majority's analogy inapposite.

The trial court's correction of its own error of law, in response to the petitioners'

motion for a new trial, by the only practical means available to any court reviewing the case—a trial de novo—is essentially equivalent to a reversal on appeal by an appellate court.[2] *See People v. Jamerson*, 196 Colo. 63, 580 P.2d 805 (1978) (a new trial order is functionally equivalent to a reversal on appeal for purposes of determining whether a defendant's speedy trial rights have been violated). It is fundamental in constitutional jurisprudence that the double jeopardy clause "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside" (emphasis in original). *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969).

In situations where criminal proceedings against an accused have not run their full course, the jeopardy which attaches at the time of the original trial continues into a second trial even though the first conviction has been set aside. *Price v. Georgia, supra; United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). This policy of allowing a retrial in order to correct previous trial error has been justified as the product of balancing the right of an accused to a fair trial against society's interest in punishing one whose guilt is established after he has obtained such a trial. *United States v. Tateo, supra.* Where a defendant is subjected to a new trial because of trial

error—as distinguished from evidentiary insufficiency—such a trial is not the result of the prosecution's failure to prove its prior charge, and the previous verdict consequently "implies nothing with respect to the guilt or innocence of the defendant." *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).

Even if one accepts the majority's analogy to the law of mistrials, this case is still one where the trial court's reversal of its own error was manifestly necessary and in keeping with the ends of justice. If the defendants had been forced to appeal the jury's verdict, an appellate court would have made exactly the same decision as the trial court. The constitution does not require an explicit reversal on appeal in order to uphold a policy against wasting time, energy, and money for all concerned. *Illinois v. Sommerville, supra.*

Under the *U.S.Const.* amend. V, the prosecution is not barred from retrying the petitioners for second-degree assault and for third-degree assault. There was no implicit acquittal of these charges in the former trial, and relevant principles of double jeopardy jurisprudence permit retrial.

Accordingly, I dissent.

**2.** The majority finds that the trial court unnecessarily dismissed the jury before it returned a complete verdict on the charges facing the defendants and, thus, the court's "actions were tantamount to an improper termination of the proceedings." The precise nature of the trial court's error eludes me. The jury's verdict was in compliance with its instructions. The defendants objected to any instruction being given on menacing, but they apparently did not object to the actual form of the instruction which was given. Indeed, the court employed the standard instruction.

The verdict forms supplied to the jury did not prejudice the defendants. Rather, if menacing had been properly before the jury, the defendants could only have benefited from an instruction which precluded the jury from returning verdicts on offenses which had victims other than Gutierrez.

In reality, the defendants received a complete verdict which was in complete compliance with

the jury instructions; and this verdict of guilt was tainted by error in law. The majority speculates that "the judge could have reinstructed the jury, furnished them with appropriate verdict forms, and required them to continue their deliberations." However, if one assumes the judge was acting according to his error and in light of his earlier instructions, he could have done little after the guilty verdict was returned without risking jury confusion or a violation of the dictates of *People v. Hancock, supra*, n. 1. If he had recognized his error earlier, during or after jury deliberations, he certainly would have had manifest necessity to declare a mistrial. At any rate, this sort of second guessing serves little purpose.

The trial court's reversal of its error and its order for a new trial showed sound judgment and were not due to a failure of proof offered at trial. The double jeopardy clause of *U.S.Const.* amend. V is simply not applicable in this case.