Joachim Friedrich NIEMAND,
Petitioner,

v.

DISTRICT COURT IN AND FOR the
COUNTY OF JEFFERSON, FIRST JU-
DICIAL DISTRICT, and the Honorable
Winston Wolvington, one of the Judges
thereof, Respondents.

No. 83SA455.

Supreme Court of Colorado,
En Banc.

July 16, 1984.

David F. Vela, Colorado State Public De-
fender, Jane A. Harden, Deputy State Pub-
lic Defender, Golden, for petitioner.

Nolan L. Brown, Dist. Atty., John E.
Byron, Sr. Deputy Dist. Atty., Charles B.
McCrory, Jr., Deputy Dist. Atty., Golden,
for respondents.

ROVIRA, Justice.

Joachim F. Niemand, petitioner, brought
this original proceeding for relief in the
nature of prohibition pursuant to C.A.R.
21, claiming that his constitutional right
not to be placed twice in jeopardy for the
crime of first-degree murder had been de-
nied. We issued a rule to show cause and
now make the rule absolute.

I.

Niemand was charged with and tried on
two counts of first-degree murder and two
counts of violent crime arising from the

shooting deaths of Sandra Niemand and Desiderio Cox. The jury was instructed on the offenses of first-degree murder and violent crime, as well as the lesser-included offenses of second-degree murder and manslaughter. The jury deliberated more than two days before finding Niemand guilty on two counts of second-degree murder and two counts of violent crime. The basis for this original proceeding is the claim, first raised in Niemand's motion for new trial, that

> "one of the jurors was aided in her decision to convict the Defendant of two counts of Second Degree Murder and Violent Crime by the unauthorized use of *Black's Law Dictionary....* In studying such law dictionary for up to four hours, the juror based her decision on definitions not provided in the Court's instructions and not reflective of the law in the state of Colorado."

At a hearing on the motion for new trial, Niemand introduced an affidavit of one of the jurors, Carolyn Clark. Her affidavit disclosed that the jury received the case on Friday, August 26, 1983, at approximately 3:00 p.m. The jurors deliberated until 5:00 p.m., went home for the weekend, and then resumed their deliberations on Monday. By the end of the day on Monday, Clark "felt a little stronger towards second-degree murder, but was still not sure." She stated in her affidavit, however, that by this time the jury had eliminated first-degree murder from its consideration.

Upon returning home Monday evening, Clark, who was still uncertain as to what her vote should be, looked up certain words in her son's copy of *Black's Law Dictionary.* The words and phrases she looked up included "malice," "passion," "premeditation," "intent," "depravity of heart," "violence," "deliberation," "deliberate," "first degree murder," "second degree murder," and "manslaughter."[1] Clark then stated that she related the words and phrases she looked up to the evidence that was present-

ed in court and became "totally convinced" that she would vote for second-degree murder.

After writing down the definitions to the words and phrases she looked up, Clark took her notes to the jury room on Tuesday. She told the other jurors what she had done and offered to share the information. Some of the jurors reacted very negatively while others spoke out in her defense. She then put her notes away, and the deliberations continued. On Tuesday afternoon, the jury agreed to a verdict of second-degree murder. Attached to Clark's affidavit were her handwritten notes which set out the definitions she obtained from *Black's Law Dictionary.*

Relying on *Alvarez v. People,* 653 P.2d 1127 (Colo.1982), Niemand argued that Clark's affidavit amply demonstrated prejudice because it reflected that, while she was undecided prior to reading the definitions as to whether she would vote for second-degree murder or manslaughter, she became convinced after reading the definitions that she would vote for second-degree murder.

The People, based on their reading of *Alvarez,* confessed the motion for new trial. They then proceeded to raise the question of what charges Niemand would be tried on in the new trial. They urged the court to adopt the position that, since the need for a new trial arose because of juror misconduct, the verdict and the fact-finding process that led to it were impermissibly tainted, and Niemand should be retried on the first-degree murder charges.

The respondent trial court made extensive findings of fact based on Clark's affidavit and her handwritten notes. It examined each word or phrase that Clark had looked up and then made a finding as to whether Niemand had been prejudiced by the juror's conduct. For example, as to the word "malice," it found that there was no prejudice to the defendant "because there was no requirement [in this case] that he

---

1. Clark listed these eleven words and phrases in her affidavit. Her handwritten notes reveal that she also looked up "passionless," "implied mal-

ice," "provocation," "sudden heat of passion," and "atrocity."

be found to have been guilty of malice." As to the phrase "second degree murder," the court found that "[i]f there was any prejudice in the definition in Black's Law Dictionary ..., it was prejudice to the People because ... Black's definition ... requires malice." As to the phrase "sudden heat of passion," the court found that "[t]he definition that she copied from Black's Law Dictionary does not vary from the Court's instruction number 16.... The two are completely consistent, and the Court finds that the defendant was not prejudiced by the definition of sudden heat of passion."

The court considered each of the other words or phrases for which Clark had obtained a definition and found that the definitions either favored Niemand, were consistent with the instructions given by the court, or were prejudicial to the People. The court concluded its analysis by finding that there was no prejudice to Niemand as a result of the juror's conduct and that "the mere use of a dictionary is not grounds for saying that the verdict must be set aside." However, under the circumstances, the court felt "bound by the *Alvarez* decision which holds directly in point that if a juror uses a dictionary and says that use affected her, then that verdict cannot stand."

After granting the motion for new trial, the trial court considered what charges Niemand should face in the new trial. It analyzed the language of article II, section 18, of the Colorado Constitution, which states:

"No person shall be compelled to testify against himself in a criminal case nor shall any person be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error of law, the accused shall not be deemed to have been in jeopardy."

Based on this provision, the court concluded that Niemand had not been placed in jeopardy because the jury's misconduct had tainted the entire fact-finding process at trial:

"The Constitution of the state of Colorado gives to this Court the power to—it says, 'If the judgment be arrested....' The Court has not entered judgment. The Court received the verdict of the jury and ordered that a presentence report be prepared, but the Court did not in this case and does not in any case involve a jury trial enter judgment and make the finding that the defendant is guilty based upon the jury's verdict until post-trial motions have been determined and the sentencing takes place, so what the Court is going to do in this case is order that the judgment be arrested [under article II, section 18], and the Court is going to order that there be a new trial on murder in the first degree, two counts, and two counts of violent crime ....

....

... What I am trying to do is say the Court is not going to enter judgment on this verdict, and the Court is ordering a new trial, and if the effect of that is that the Court has declared a mistrial, then I declare a mistrial."

At a later hearing, the trial court made additional findings. It decided that, because of *Alvarez*, there was a "manifest necessity for a new trial in this case." However, it pointed out that the reason for the new trial was a form of juror misconduct "over which the Court, the prosecution and the defendant had no control." The result was a tainted verdict, "and the verdict was tainted on first degree murder exactly as much as it was tainted on second degree murder. The situation [here]," the court concluded, "is no different than if the jury had not been able to agree at all because their verdict is a nullity because of this misconduct by one of the jurors."

The trial court also ruled that, since Niemand was to be retried on first-degree murder charges, and since the evidence presented at the first trial was sufficient to establish that "the proof is evident and the presumption great," Niemand would be

held without bond pending the retrial of his case.

## II.

In *Alvarez*, we held that the use of a dictionary to assist in understanding legal terminology is improper. Jurors are required to follow only the law as it is given in the court's instructions; they are bound, therefore, to accept the court's definitions of legal concepts and to obtain clarifications of any ambiguities in terminology from the trial judge, not from extraneous sources. 653 P.2d at 1130. *See Nichols v. Seaboard Coastline Railway Co.*, 341 So.2d 671 (Ala.1976) (juror's use of dictionary at home during night recess was prejudicial error where purpose was to clarify essential legal concepts). We also held that a defendant must establish that he was prejudiced by the misconduct in order to overturn his conviction. We did not answer the question of whether prejudice should be conclusively presumed when a juror consults a dictionary for aid in understanding words used in the instructions.

Under the facts in *Alvarez*, we decided that the conduct of one of the jurors in that case established prejudice to the defendant. The juror in question submitted an affidavit which stated that she had serious doubts about the defendant's guilt. The juror was "so troubled" by her doubts that she looked up certain words, in particular the word "vague," in her dictionary. She admitted in her affidavit that the dictionary meaning helped her make up her mind that her doubt was not reasonable. This latter fact, in our view, was critical:

> "The central fact is that the juror who looked up the words was aided by the dictionary definitions in deciding that her doubt was not reasonable. This decision was essential to the defendant's conviction. We hold that this adequately established prejudice resulting from juror misconduct and requires reversal."

*Alvarez*, 653 P.2d at 1132 (footnote omitted).

Here, Clark stated in her affidavit that on Monday evening she "felt a little stronger towards second degree murder, but was still not sure." After consulting *Black's Law Dictionary* and relating the words to the evidence, she stated, "my mind was totally convinced that I would vote for second degree murder." Although the trial court found that the dictionary definitions imposed a greater burden on the prosecution than the instructions required, we believe that here, as in *Alvarez*, the central fact is that the juror who looked up the words was aided by the dictionary definitions in resolving her uncertainty. This resolution was essential to Niemand's conviction of second-degree murder and "adequately established prejudice resulting from juror misconduct ...." *Id.*

## III.

Niemand argues that the trial court's order reinstating the two first-degree murder charges violates both his federal and state constitutional rights by placing him twice in jeopardy. The substance of his argument is that, based on the jury's verdict, there was an implied acquittal of the first-degree murder charges, and that if the court's ruling is allowed to stand he would be "placed in the untenable position of being forced to choose between his Fifth Amendment right to be free of double jeopardy and his Sixth Amendment right to enjoy a fair trial." In response, the People argue that, when the fact-finding process itself is so tainted as to require a new trial, the part of the verdict inuring to the benefit of the defendant is as tainted as the part of the verdict rendered against him. As a result, the verdict is a nullity, and manifest necessity mandates a retrial on the first-degree murder charges. We disagree with the People. In our view, the reinstatement of first-degree murder charges violated Niemand's constitutional rights and must be reversed.

The double jeopardy clause in the fifth amendment provides that "[n]o person shall ... be subject for the same offense to

be twice put in jeopardy of life or limb. . . . " *U.S. Const.* amend. V.[2] In *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the United States Supreme Court interpreted the federal provision in a case similar to Niemand's. The defendant was tried on a charge of first-degree murder but was convicted by a jury of the lesser-included offense of second-degree murder. After the District of Columbia Circuit reversed the conviction for insufficient evidence, the defendant was retried under the original indictment and convicted of first-degree murder.

The court of appeals affirmed the second conviction, but the Supreme Court reversed. It explained that the prohibition against double jeopardy was "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Id.* at 187, 78 S.Ct. at 223. In *Green,* even though the jury's verdict was silent on the first-degree murder charge, the defendant was in "direct peril" of being convicted of the higher offense at his first trial. The jury instead chose to convict him of the lesser-included offense of second-degree murder. "In brief," the Court concluded, "we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.' " *Id.* at 191, 78 S.Ct. at 225.

In *Ortiz v. District Court,* 626 P.2d 642 (Colo.1981), this court adopted the implied acquittal doctrine set forth in *Green.* We held that the jury's verdict of guilty of felony menacing was an implied acquittal of the charge of second-degree assault, even if the former offense was not technically a lesser-included offense of the latter. We stated:

"The dispositive factor is not the validity of the felony menacing conviction, but, rather, the jury's refusal to find the petitioner guilty of assault in the second-degree. An error in submitting felony menacing to the jury as a 'lesser' offense does not weaken the inference that the jury intended to acquit petitioners of the 'greater' offense of second-degree assault."

*Id.* at 646 n. 8. *See also* § 18–1–301(1)(a), 8 C.R.S. (1978) ("A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense even though the conviction is subsequently set aside.").

Based on *Green* and *Ortiz,* we conclude that the trial court's order reinstating first-degree murder charges in this case violated Niemand's federal and state constitutional rights. The jury's verdict of second-degree murder, though flawed under *Alvarez,* constituted an implied acquittal of the higher offense of first-degree murder. *See Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *People v. Pena,* 151 Cal.App.3d 462, 198 Cal.Rptr. 819 (Cal.App.1984); *State v. Almeda,* 189 Conn. 303, 455 A.2d 1326 (1983); *State v. Young,* 311 S.E.2d 118 (W.Va.1983). Niemand should therefore be retried only on two counts of second-degree murder and appropriate lesser-included offenses.

The trial court's order is reversed. The rule to show cause is made absolute.

---

2. The fifth amendment proscription against double jeopardy is made applicable to the states by *U.S. Const.* amend. XIV. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).