The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Alexander CARDENAS, Defendant–Appellant.

No. 98CA1944.

Colorado Court of Appeals, Div. IV.

Nov. 9, 2000.

Rehearing Denied Jan. 4, 2001.

Certiorari Denied July 2, 2001.*

* Justice BENDER would grant as to the following issue:

Whether the court of appeals erred in concluding that the double jeopardy provisions of the federal and state constitutions did not prohibit retrying the petitioner for second degree murder.

Ken Salazar, Attorney General, Evan W. Jones, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Alexander Cardenas, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We affirm.

On September 20, 1997, defendant called the police to report a homicide. When the police arrived, defendant admitted killing the victim, his long-time friend, following an evening of drinking, using drugs, and an altercation. The police read defendant an advisement form in accordance with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and defendant initialed each paragraph. After the *Miranda* advisement, defendant made additional statements to the police, and four days later, he was charged with second degree murder.

At his first trial, the jury informed the court that it was deadlocked. Defendant moved for a mistrial. The court interviewed the foreperson, who told the court that the jury was divided as to whether he was guilty of second degree murder with heat of passion or whether defendant was not guilty. The trial court granted defendant's motion for a mistrial. The second trial resulted in the conviction at issue here.

## I. Judgment of Acquittal

### A. Implied acquittal

Defendant first contends that his constitutional protection against double jeopardy was violated by the second trial because the jury in the first trial had impliedly acquitted him of the second degree murder charge. We disagree.

A defendant is impliedly acquitted of a greater offense when he or she is charged with greater and lesser offenses and the jury finds him or her guilty of only the lesser offense. An implied acquittal prevents retrial on the greater offense because a second trial would violate a defendant's constitutional protection against double jeopardy. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Ortiz v. District Court*, 626 P.2d 642 (Colo.1981).

Second degree murder occurs when a person "knowingly causes the death of a person." Section 18–3–103(1), C.R.S.2000. A person acts knowingly when he or she "is aware that his conduct is of such nature or that such circumstance exists." A person also acts knowingly with respect to a result of his conduct "when he is aware that his conduct is practically certain to cause the result." Section 18–1–501(6), C.R.S.2000.

Second degree murder is a class two felony; however, it is reduced to a class three felony if jurors find a defendant acted with heat of passion. The heat of passion

mitigator applies when death is "caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person...." Section 18–3–103(3)(b), C.R.S.2000.

In order to consider the mitigating factor of heat of passion, the jury must first find that the elements of second degree murder have been shown by the evidence.

Here, upon learning in the first trial that the jury was deadlocked, the court engaged in the following dialogue with the jury foreperson:

THE COURT: ... What I would like to know is, is the jury at an impasse between guilty and not guilty, or is it an impasse between guilty and this heat of passion finding?

JUROR: Guilty and heat of passion finding—not guilty and heat of passion finding.

THE COURT: So on the one hand there is a block of jurors that are voting not guilty?

JUROR: That's correct.

THE COURT: And the other's relative to guilty—

JUROR: That's correct, with provocation and heat of passion.

Thereafter, the court declared a mistrial, but denied defendant's request that the jury render a verdict on second degree murder without heat of passion.

Defendant argues that, under the circumstances presented, the jury in the first trial impliedly acquitted him of second degree murder without heat of passion. We do not agree.

Here, the court instructed the jury on the provocation mitigator to second degree murder as follows: "If you find the defendant not guilty of murder in the second degree, you need not consider this instruction. If, however, you find the defendant guilty of murder in the second degree, you must then consider the issue of provocation."

Defendant is mistaken in his contention that the jury unanimously found him not guilty of second degree murder without heat of passion because some jurors had found

him guilty of second degree murder, but had moved on to consider the mitigating factor of heat of passion and the others believed he was not guilty.

Because no evidence was presented to the contrary, we presume that the jury followed the instructions of the court, *see People v. Ibarra,* 849 P.2d 33 (Colo.1993), and those jurors who believed defendant guilty of some offense first concluded he was guilty of second degree murder before they began to examine any mitigating factors.

Although defendant relies upon *Ortiz v. District Court, supra,* to support his contention that he was impliedly acquitted of second degree murder without heat of passion, that case is distinguishable. In *Ortiz,* the jury returned a verdict convicting the defendant of the lesser offense of felony menacing without addressing the greater offenses of second and third degree assault. The supreme court held that this was an implied acquittal of the greater offense.

Here, unlike in *Ortiz* and *Green v. United States, supra,* the jury in the first trial did not return any verdict. Thus, we hold that, without a verdict, there was no implied acquittal on the charge of second degree murder without heat of passion. Therefore, defendant's constitutional protection against double jeopardy was not violated.

### B. Motion for Judgment of Acquittal

In a related contention, defendant next argues that the trial court erred by failing to grant his motion for judgment of acquittal based on the finding of the jurors in the first trial that he was not guilty of second degree murder without heat of passion. However, since there was no implied acquittal, the court's rejection of defendant's motion was appropriate.

### II. Lesser Included Offenses

Defendant contends that the trial court erred when it refused to instruct the jury on lesser included offenses of reckless manslaughter and criminally negligent homicide. We disagree.

Section 18–1–408(6), C.R.S.2000, provides that: "The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

■ It is proper for a trial court to deny a request to instruct the jury on a lesser included offense where the record does not present any evidence leading to a rational basis for acquitting a defendant of the greater offense and convicting him or her of the lesser offense. *People v. Price,* 969 P.2d 766 (Colo.App.1998). Such is the case here.

■ Although defendant argued that he acted in self-defense, he voluntarily confessed on two different occasions that he stabbed the victim to death. Furthermore, the record contains no evidence that he did not act knowingly, the requisite mental state for second degree murder.

Accordingly, we conclude that the trial court's rejection of instructions on reckless manslaughter and criminally negligent homicide was not error.

### III. Hearsay Testimony

Defendant next argues that the trial court erred by admitting hearsay testimony about the victim's fear of defendant through the state of mind exception to the hearsay rule. We are not persuaded.

One exception to the prohibition against admitting hearsay testimony evidence at trial is the state of mind exception, under which a person may testify about another person's out-of-court statements to explain the declarant's state of mind. CRE 803(3).

■ Where evidence raises the issue whether the victim was the initial aggressor, evidence that the victim feared the defendant is probative to show that the victim was not the initial aggressor. *People v. Madson,* 638 P.2d 18 (Colo.1981).

■ A trial court is given considerable discretion in deciding questions concerning the admissibility of evidence and has broad discretion to determine the relevancy of evidence, its probative value, and its prejudicial impact. *People v. Huckleberry,* 768 P.2d 1235 (Colo.1989).

■ Absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. *People v. Lowe,* 660 P.2d 1261 (Colo. 1983). To show an abuse of discretion, an appellant must establish that the trial court's decision to admit the evidence was manifestly arbitrary, unreasonable, or unfair. *King v. People,* 785 P.2d 596 (Colo.1990).

Here, the victim's sister testified that, because defendant had become more aggressive and she thought he was using drugs, the victim had become increasingly afraid of defendant shortly before his death. Defendant's objections to the sister's testimony reporting the statements of the victim were overruled based upon the state of mind exception to the hearsay rule, and the jury was instructed to use this evidence only for the limited purpose of examining the victim's state of mind.

■ The first statement made by the witness, that the victim had said he was "getting afraid of" defendant, was properly admitted as state of mind evidence because it described the victim's then existing state of mind. This was particularly relevant because of defendant's theory of self-defense.

■ The second statement explained why the victim was afraid of the defendant. Any error with respect to this statement was harmless because it was brief and general in nature. Thus, the court's ruling as to this testimony does not require reversal.

### IV. Collateral Attack

Next, defendant argues that the trial court erred in finding that defendant's collateral attack on a prior conviction was time barred, and that there was no justifiable excuse or excusable neglect. We disagree.

■ Here, defendant alleges that his collateral attack on a prior conviction was not time barred because of deficiencies at the providency hearing. First, he asserts that he was under the influence of cocaine at the time he entered his guilty plea, and consequently, did not understand the advisement

given by the trial court. He maintains that he informed the trial court of this fact, but was ignored. Furthermore, he argues that his trial counsel did not inform him that there was a time limit for collateral attacks.

However, defendant did not include a copy of the transcript of the providency hearing in the record. *See* C.A.R. 10(c); *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App. 1991). Thus, we cannot determine whether defendant's allegations concerning the providency hearing were sufficient to establish excusable neglect or justifiable excuse, and we must presume that the finding of the trial court that defendant was time barred from raising a collateral attack on a prior conviction was supported by the evidence. *See People v. Wells,* 776 P.2d 386 (Colo.1989). Accordingly, defendant has failed to meet the burden of showing error.

### V. Waiver of *Miranda* Rights

Defendant next contends that the trial court erred in finding that statements he made to the police were voluntary, and that he waived his *Miranda* rights voluntarily, knowingly, and intelligently. We disagree.

### A.

Defendant first contends that the statements he made to the police were not voluntary. We disagree.

■ To be admissible, a statement must be voluntary. *People v. Corley,* 698 P.2d 1336 (Colo.1985). A statement is voluntary when it is not the product of threats or violence, not obtained by any direct or implied promises, or by the exertion of any improper influence. *People v. Freeman,* 668 P.2d 1371 (Colo.1983).

■ The prosecution must prove, by a preponderance of the evidence, that the statement was voluntary. *People v. May,* 859 P.2d 879 (Colo.1993).

■ In determining whether a statement was voluntary, the court should examine the totality of the circumstances, including the events surrounding the statement and the presence or absence of official misconduct.

*People v. Breidenbach,* 875 P.2d 879 (Colo. 1994).

■ A trial court's factual findings regarding the voluntariness of a statement are entitled to deference on review. However, the ultimate determination whether a statement is voluntary is subject to *de novo* review because it is a legal question. *People v. Lopez,* 946 P.2d 478 (Colo.App.1997).

Here, defendant made two separate statements to the police. He made his first statement to the two police officers who arrived at his daughter's house after defendant called the police and confessed. Before his confession, defendant was advised of his *Miranda* rights and waived them by initialing each paragraph of a *Miranda* advisement form.

That night, one of the officers wrote a statement from the notes he took during his questioning of defendant. This statement was admitted at trial. In the statement, the officer noted that defendant was intoxicated but not incoherent.

Defendant made his second statement to a detective during a videotaped interview at the police station. Again, defendant was advised of his *Miranda* rights and waived them. The detective then asked defendant if he was under the influence of narcotics, drugs, or alcohol. The defendant answered, "Yes."

■ Although defendant was under the influence of drugs and alcohol when he made both statements, there is no evidence in the record that either statement was obtained through the use of threats or violence, direct or implied promises, or by the exertion of any improper influence. On the contrary, there is ample evidence to support the trial court's finding that defendant's statements were voluntary, including defendant's own statement that his confession was voluntary.

Furthermore, there was no police misconduct. Rather, defendant, through his own volition, called the police to confess his crime.

Therefore, we conclude that the trial court did not err in finding that defendant's statements were voluntary and, thus, admitting them into evidence.

## B.

■ Defendant next contends that he did not waive his *Miranda* rights voluntarily, knowingly, or intelligently because he was intoxicated when he made both statements. We disagree.

■ To determine whether a waiver of *Miranda* rights was in fact valid, a court must first determine that the waiver was voluntary. Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Hopkins,* 774 P.2d 849 (Colo.1989).

Here, defendant's statements were voluntary, and the dispositive issue is whether defendant's waiver of his *Miranda* rights was made with full awareness of the rights being abandoned and of the decision to abandon those rights.

Defendant contends that his intoxication negated his ability to give a valid waiver of his *Miranda* rights. However, "[i]ntoxication does not subvert consent if the individual is capable of giving an explanation of his actions." *People v. Helm,* 633 P.2d 1071, 1077 (Colo.1981).

The arresting officer testified about the first statements defendant made when the police arrived after responding to defendant's call. The officer testified that defendant was intoxicated but not incoherent, and that defendant made numerous statements after waiving his *Miranda* rights that were not in response to any questioning by the police.

During the second statement, the detective conducting the interview engaged in the following conversation with defendant:

DETECTIVE: Do you understand what's going on, do you understand everything, do you . . .

DEFENDANT: . . . kind of.

DETECTIVE: Kind of?

DEFENDANT: I know I did somethin' wrong. I hurt my buddy.

DETECTIVE: Do you understand it well enough that you want to talk to us about this?

DEFENDANT: Yeah. 'Cause when I'm sober, I might not.

DETECTIVE: Okay. Are you making this statement voluntarily?

DEFENDANT: Yes.

Later in the interview, defendant reaffirmed to the police that he understood what he was doing and the rights he had waived.

Upon considering the totality of the circumstances surrounding both sets of statements, we conclude that defendant's intoxication did not prohibit him from understanding the nature of the rights he was waiving or from understanding the consequences of his waiver. We further conclude that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights and that the trial court properly admitted these statements at trial.

## VI. Theory of the Case Instruction

Defendant finally contends that the trial court erred in failing to give his theory of the case instruction and in failing affirmatively to assist defendant in drafting such an instruction. We are not persuaded.

■ A defendant is entitled to a proper theory of the case instruction if it is supported by the evidence. A trial court has an affirmative obligation to cooperate with counsel to correct a tendered instruction or to incorporate the substance of a tendered instruction into an instruction drafted by the court. *People v. Nunez,* 841 P.2d 261 (Colo. 1992). However, an instruction improperly labeled as a theory of the case instruction need not be given. *Wertz v. People,* 160 Colo. 260, 418 P.2d 169 (1966).

■ A trial court may refuse an instruction if it is argumentative, unduly emphasizes particular evidence, or contains statements not supported by the evidence. *People v. Fleming,* 804 P.2d 231 (Colo.App. 1990). A trial court may also refuse to given an instruction that is encompassed in other instructions. *People v. Tippett,* 733 P.2d 1183 (Colo.1987).

■ Here, defendant informed the court that he wished to give a theory of the case instruction, and the court stated that it would

assist defendant in preparing such an instruction. However, the instructions that defendant tendered to the court were not proper theory of the case instructions, and the court rejected them. Defendant did not tender any further instructions to the court or ask for further assistance in drafting a theory of the case instruction.

We perceive no error because the instructions defendant offered that were relevant to his theory of the case were encompassed in other instructions. *See People v. Tippett, supra.*

The judgment is affirmed.

JUDGE MARQUEZ and JUDGE CASEBOLT concur.